IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-51199

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MOISES CHAPA-GARZA, also known as
Moises Garza, also known as
Moises Garza Chapa, also known as
Moises G Chapa, also known as
Moises Chapa,

Defendant-Appellant.

_____

No. 00-50049

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JULIAN RICARDO GOYTIA-CAMPOS,
also known as Julian Ricardo
Goitia-Campos,

Defendant-Appellant.

_____

No. 00-50051

---

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

    versus

ALFONSO GUADALUPE PEREZ-VELAZQUEZ,
also known as Erick Lee,

                              Defendant-Appellant.

---

No. 00-50107

---

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

    versus

FRANCISCO JAVIER SALDANA-ROLDAN,

                              Defendant-Appellant.

---

No. 00-50239

---

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

    versus

EPIFANIO IVARBO-MARTELL,
also known as El Chino,

2

                                        Defendant-Appellant.

                    _____

            Appeal from the United States District Court
                  for the Western District of Texas
                    _____
                          March 1, 2001

Before GOODWIN[1], GARWOOD and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

    Defendants-appellants Moises Chapa-Garza, Julian Ricardo Goytia
Campos, Alfonso Guadalupe Perez Velazquez, Francisco Javier Saldana
Roldan and Epifanio Ivarbo-Martell appeal their sentences.  We VACATE
their sentences and REMAND for resentencing.

                    **Facts and Proceedings Below**

    All five of the defendants-appellants pleaded guilty to unlawfully
being in the United States after removal therefrom, in violation of 8
U.S.C. § 1326(a).  For violating section 1326(a), U.S.S.G. § 2L1.2
provides for a base offense level of 8, with an increase of 16 offense
levels if removal from the United States was preceded by a conviction
for an "aggravated felony".[2]  Application Note 1 of guideline 2L1.2

_____

    [1]Circuit Judge of the Ninth Circuit, sitting by designation.

    [2]U.S.S.G. § 2L1.2 provides:
"§2L1.2  **Unlawfully Entering or Remaining in the United States**
    (a)  Base Offense Level: **8**
    (b)  Specific Offense Characteristic
         (1)  If the defendant previously was deported after a
              criminal conviction, or if the defendant unlawfully
              remained in the United States following a removal order
              issued after a criminal conviction, increase as follows
              (if more than one applies, use the greater):
              (A)  If the conviction was for an aggravated felony,

                                3

refers to 8 U.S.C. § 1101(a)(43) for the definition of "aggravated

felony".[3]  Section 1101(a)(43) lists several examples of offenses

considered aggravated felonies.  One of these, contained in section

1101(a)(43)(F),[4] is a "crime of violence" as defined in 18 U.S.C. § 16.

18 U.S.C. § 16 provides:

> "The term "crime of violence" means—
>     (a) an offense that has as an element the use,
> attempted use, or threatened use of physical force against
> the person or property of another, or
>     (b) any other offense that is a felony and that, by its
> nature, involves a substantial risk that physical force
> against the person or property of another may be used in the
> course of committing the offense."

Over appellants' objections, the district courts applied guideline

2L1.2's 16 level increase, finding that Texas felony DWI[5] was a crime of

violence as defined in 18 U.S.C. § 16(b).  As a result, the sentence of

---

> increase by **16** levels.
> (B)  If the conviction was for (i) any other felony, or
>      (ii) three or more misdemeanor crimes of violence
>      or misdemeanor controlled substance offenses,
>      increase by **4** levels."

[3]Application Note 1 provides:
"1.  For purposes of this guideline—
. . . .
'Aggravated felony,' is defined at 8 U.S.C. § 1101(a)(43) without regard
to the date of conviction of the aggravated felony."

[4]8 U.S.C. § 1101(a)(43) provides, in relevant part:
"(43) The term 'aggravated felony' means—
. . . .
    (F) a crime of violence (as defined in section 16 of Title 18, but
not including a purely political offense) for which the term of
imprisonment [is] at least one year;"

[5]TEX. PENAL CODE ANN. § 49.09 provides that after two convictions for
violating section 49.04, Driving While Intoxicated, subsequent
convictions are third degree felonies instead of Class B misdemeanors.

4

each appellant was considerably higher than it otherwise would have been.  At the time these appeals were taken, the sole issue raised by each defendant was whether Texas felony DWI is "an aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(A).  Because the issues were identical, the cases were consolidated for oral argument.

*Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000), was decided after the defendants-appellants filed their opening briefs.  By a single supplemental brief, the defendants-appellants each raise the same *Apprendi* issue.  8 U.S.C. § 1326(a) provides that the maximum sentence shall be a fine and/or imprisonment up to two years.  Section 1326(b)(2) increases the maximum penalty to a fine and/or imprisonment up to twenty years if the removal of the defendant was preceded by a conviction for an aggravated felony.  The defendants-appellants' sentences ranged from 41 to 57 months, all well above the section 1326(a) maximum. Defendants-appellants argue that, under *Apprendi*, the statutory maximum cannot be increased from two to twenty years unless the fact that triggers the higher maximum sentence of section 1326(b)(2), a prior aggravated felony conviction, is alleged in the indictment.  Defendants-appellants concede that their argument is foreclosed by *Almendarez-Torres v. United States*, 118 S.Ct. 1219 (1998), and raise the issue in this Court only to preserve the possibility of review by the United States Supreme Court.

Our disposition of these two legal issues will resolve all five appeals.

5

**Discussion**

I.

This Court reviews the district court's interpretation of the Sentencing Guidelines *de novo* and its application of the guidelines for clear error. *United States v. Cho*, 136 F.3d 982, 983 (5th Cir. 1998). Defendants-appellants' sentences must be affirmed unless they were imposed in violation of law or were based upon an erroneous application of the Sentencing Guidelines. *United States v. Velazquez-Overa*, 100 F.3d 418 (5th Cir. 1996).

18 U.S.C. § 16(b) is the only justification for the 16-level enhancement advanced by the government. Section 16(b) provides that a crime of violence is "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The government correctly observes that the words "by its nature" require us to employ a categorical approach when determining whether an offense is a crime of violence. *Velazquez-Overa*, 100 F.3d at 420-21. This means that the particular facts of the defendant's prior conviction do not matter, e.g. whether the defendant actually did use force against the person or property of another to commit the offense. The proper inquiry is whether a particular defined offense, in the abstract, is a crime of violence under 18 U.S.C. § 16(b).

This is the second time a panel of this Court has been called upon to decide the question of whether felony DWI is a crime of violence as

6

defined by 18 U.S.C. § 16(b).  In *Camacho-Marroquin v. Immigration and Naturalization Service*, 188 F.3d 649 (5th Cir. 1999), *withdrawn* 222 F.3d 1040 (5th Cir. 2000), this Court held that felony DWI was a crime of violence.  However, Camacho-Marroquin moved to withdraw his petition for rehearing en banc so that the Immigration and Naturalization Service could deport him in lieu of incarceration.  As a result, the panel withdrew its opinion.  *Camacho-Marroquin* had held that felony DWI was a crime of violence because of the substantial risk that drunk driving will result in an automobile accident.  *Camacho-Marroquin*, 188 F.3d at 652.  The government agrees with this approach and urges that anytime an offense involves a substantial risk of harm, even accidental harm, that offense is a crime of violence.

We disagree with the government's proposed construction of section 16(b) for three reasons: 1) it requires that section 16(b) be construed the same as U.S.S.G. § 4B1.2(a)(2), which now contains significantly broader language;[6] 2) "substantial risk that physical force . . . may be used" contemplates only reckless disregard for the probability that *intentional* force may be employed; and 3) the physical force described in section 16(b) is that "used in the course of committing the offense", not that force that could result from the offense having been committed.

A.

There are two possible constructions of the operative language of

---

[6]Prior to the November 1, 1989, change, guideline 4B1.2, like the current version of guideline 2L1.2 (via 8 U.S.C. § 1101(a)(43)(F)), referred to 18 U.S.C. § 16 for the definition of "crime of violence".

7

18 U.S.C. § 16(b). The government urges that we interpret section 16(b) the same way the Seventh Circuit interpreted U.S.S.G. § 4B1.2(a)(2) in *United States v. Rutherford*, 54 F.3d 370 (7th Cir. 1995).[7] Under the guideline 4B1.2(a)(2) standard, any offense that involves "pure recklessness," i.e. a conscious disregard of a substantial risk of injury to others, is a crime of violence. The alternative reading is that section 16(b) applies only when the nature of the offense is such that there is a substantial likelihood that the perpetrator will *intentionally* employ physical force against another's person or property in the commission thereof. The latter approach requires recklessness as regards a substantial risk that intentional force will be utilized by the defendant to effectuate commission of the offense.

We begin by comparing the text of guideline 4B1.2(a)(2) with that of section 16(b). Guideline 4B1.2(a)(2)'s "otherwise" clause contains broader language than does section 16(b). Guideline 4B1.2(a)(2) only

---

[7]U.S.S.G. § 4B1.2(a) provides:
"The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
(1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."
In *Rutherford*, the Seventh Circuit held that drunk driving was a crime of violence under guideline 4B1.2(a)(2) because it is "a reckless act that often results in injury." *Rutherford*, 54 F.3d at 376-77. Rutherford's prior conviction was not for simple felony DWI, but for first degree assault. In Alabama (the jurisdiction of Rutherford's prior conviction), a person commits the offense of first degree assault if, while driving under the influence of alcohol or drugs, he causes bodily injury to another with a motor vehicle. *Rutherford* analyzed this prior conviction as though it were merely for DWI. *Id.* at 376.

requires that the offense involve conduct that poses a serious risk of physical injury to another person.  It does not require, as section 16(b) does, that there be a substantial risk that the defendant will *use* physical force against another's person or property *in the course of committing the offense*.  Guideline 4B1.2(a)(2)'s otherwise clause concerns only the risk of one particular *effect* (physical injury to another's person or property) of the defendant's conduct.  Section 16(b) is focused on the defendant's conduct *itself*, as there is no requirement that there be a substantial risk that another's person or property will sustain injury, but only that there be a substantial risk that the defendant will *use* physical force against another's person or property *in the course of committing the offense*.

In *United States v. DeSantiago-Gonzalez*, 207 F.3d 261 (5th Cir. 2000), this Court recognized the difference between section 16(b) and guideline 4B1.2(a)(2).  *DeSantiago-Gonzalez* was applying, to misdemeanor DWI, the same guideline 4B1.2(a)(2) language that *Rutherford* applied to felony DWI.[8]  More importantly, notwithstanding that *DeSantiago-Gonzalez*

---

[8]*Desantiago-Gonzalez*, like the present case, involved an enhancement under guideline 2L1.2.  However, guideline 2L1.2 contains two offense level increase options.  The first is a 16 level increase for an aggravated felony.  This is the increase applied to the defendants-appellants.  The second is a four level increase if the defendant has a prior record that includes any other felony or three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses.  This was the enhancement at issue in *Desantiago-Gonzales*.  For purposes of the four level enhancement only, Application Note 1, Clause 4 of guideline 2L1.2 expressly references guideline 4B1.2 for the definition of a crime of violence.

was decided before *Camacho-Marroquin* was withdrawn, *Camacho-Marroquin* was not given

> "controlling effect because it was a deportation case wherein the applicable definition of 'crime of violence' was found at 18 U.S.C. § 16, which defines the term 'crime of violence' in language similar to but not identical with the definition which controls the sentencing issue presented in this appeal found at U.S.S.G. § 4B1.2(a)."

*DeSantiago-Gonzalez*, 207 F.3d at 264.

Effective November 1, 1989, the definition of crime of violence under guideline 4B1.2(a)(2) was changed from a reference to section 16(b) to that which now appears. This change counsels against interpreting section 16(b) and guideline 4B1.2(a)(2) the same way.

Besides the aforementioned reasons to interpret section 16(b) differently than guideline 4B1.2(a)(2), we believe that the "substantial risk that physical force . . . may be used" language in section 16(b) refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force. The criterion that the defendant use physical force against the person or property of another is most reasonably read to refer to intentional conduct, not an accidental, unintended event. THE AMERICAN HERITAGE COLLEGE DICTIONARY (3rd ed. 1997) defines the verb "use" as:

> "1. To put into service or apply for a purpose; employ. 2. To avail oneself of; practice: *use caution*. 3. To conduct oneself toward; treat or handle: *used his colleagues well*. 4. To seek or achieve an end by means of; exploit: *felt he was being used*. 5. To take or consume; partake of: *She rarely used alcohol*."

The four relevant definitions indicate that "use" refers to volitional,

10

*purposeful*, not accidental, employment of whatever is being "used".  Our

understanding accords with the Third Circuit's in *United States v.*

*Parson*, 955 F.2d 858 (3rd Cir. 1992).  Although *Parson* involved

interpretation of guideline 4B1.2(a)(2), the Third Circuit found it

necessary to discuss the history of the career offender guideline,

including a comparison of the pre November 1, 1989, language (which

referred to 18 U.S.C. § 16) and the current language:

> "[T]he second branch of the definition in section 16 covered
> only felonies that 'by nature, involve[] a substantial risk
> that physical force . . . may be used,' whereas the revised
> definition in the current Guideline's second prong [§
> 4B1.2(a)(2)] covers conduct that 'presents a serious risk of
> physical injury.'
>      At first blush, the difference in phrasing appears
> trivial because most physical injury comes from the use of
> physical force.  But the distinction is significant.  Use of
> physical force is an intentional act, and therefore the first
> prong of both definitions [section 16(a) and guideline
> 4B1.2(a)(1)] requires specific intent to use force.  As to
> the second prong of the original definition, a defendant's
> commission of a crime that, by its nature, is likely to
> require force similarly suggests a willingness to risk having
> to commit a crime of specific intent.  For example, a burglar
> of a dwelling risks having to use force if the occupants are
> home and hear the burglar.  In such a case, the burglar has
> a mens rea legally nearly as bad as a specific intent to use
> force, for he or she recklessly risks having to commit a
> specific intent crime.
>      In contrast, under the second prong of the revised
> definition, criminals whose actions merely risk causing
> physical injury may have a lower mens rea of 'pure'
> recklessness: they may lack an intent, desire or willingness
> to use force or cause harm at all.  For example, a parent who
> leaves a young child unattended near a pool may risk serious
> injury to the child, but the action does not involve an
> intent to use force or otherwise harm the child.  Similarly,
> a drunk driver risks causing severe injury to others on the
> road or in the car, but in most cases he or she does not
> intend to use force to harm others.  In this case, the crime
> of reckless endangering necessarily involves a serious risk
> of physical injury to another person, but not necessarily an

11

intent to use force against other persons."

*Id.* at 866. This passage explains not only the proper construction of section 16(b), but also highlights the material difference in scope between it and guideline 4B1.2(a)(2). Accordingly, we refuse to read section 16(b) as we do guideline 4B1.2(a)(2), and hold, consonant with the ordinary meaning of the word "use," that a crime of violence as defined in 16(b) requires recklessness as regards the substantial likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the offense.

### B.

Another aspect of section 16(b) that bears upon the question of whether felony DWI is a crime of violence is the requirement that the physical force be applied "in the course of committing the offense". The meaning of these words is exemplified in this Court's decision of *United States v. Velazquez-Overa*, 100 F.3d 418 (5th Cir. 1996). In *Velazquez-Overa*, we held that the crime of indecency with a child involving sexual contact was a crime of violence as defined in 18 U.S.C. 16(b) because it was likely that the perpetrator would find it necessary to use physical force to "ensure the child's compliance" and "perpetrate the crime". *Id.* at 422. *Velazquez-Overa* explicitly distinguished guideline 4B1.2(a)(2) on this basis.

> "The definition of 'crime of violence' in the career offender
> provisions differs somewhat from that in 18 U.S.C. § 16. The
> touchstone of 'violence' in the career offender provisions
> is the risk that physical injury will result, rather than the

12

> risk that physical force may be used to carry out the offense."

*Id.* at 421 n.4. That section 16(b) refers only to that physical force that may be used to perpetrate the offense is in harmony with its requirement that the offender *intentionally* use the force against the person or property of another.

C.

We turn now to the ultimate question we are called upon to decide. While the victim of a drunk driver may sustain physical injury from physical force being applied to his body as a result of collision with the drunk driver's errant automobile, it is clear that such force has not been intentionally "used" against the other person by the drunk driver at all, much less in order to perpetrate any crime, including the crime of felony DWI. The crime of Texas felony DWI is committed when the defendant, after two prior DWI convictions, begins operating a vehicle while intoxicated. *Intentional* force against another's person or property is virtually never employed to commit this offense. Accordingly, we hold that felony DWI is not a crime of violence as defined by 18 U.S.C. § 16(b).

In so holding, we are mindful that one of our prior opinions contains dictum that is not inconsistent with the government's view that section 16(b) should be construed, as guideline 4B1.2 is, to embrace crimes of simple recklessness. In *United States v. Galvan-Rodriguez*, 169 F.3d 217, 219 (5th Cir. 1999), this Court held that unauthorized use of another's motor vehicle, or joy riding, was a crime of violence as

13

defined by section 16(b):

> "Just as burglary of a vehicle involves a substantial risk
> that property might be damaged or destroyed in the commission
> of the offense, the unauthorized use of a vehicle likewise
> carries a substantial risk that the vehicle might be broken
> into, 'stripped,' or vandalized, or that it might become
> involved in an accident, resulting not only in damage to the
> vehicle and other property, but in personal injuries to
> innocent victims as well.
>     It is true that, as argued by Galvan, the unauthorized
> use of a motor vehicle will not always result in physical
> force to persons or property, as, for example, when a child
> takes the family car 'joyriding' without parental consent;
> however, there is a strong probability that the inexperienced
> or untrustworthy driver who has no pride of ownership in the
> vehicle will be involved in or will cause a traffic accident
> or expose the car to stripping or vandalism." (footnote
> omitted).

*Galvan-Rodriguez* did not require us to resolve the issue presented in the present appeal. Our resolution thereof is completely compatible with the holding in *Galvan-Rodriguez*, as it cannot be doubted that there is a substantial risk that physical force will be used against a vehicle in order to obtain the unauthorized access to it that is necessary for the commission of the offense of joy riding.

II.  The *Apprendi* Issue

As the *Apprendi* issue was not raised below, we review only for plain error. As explained below, we are unable to find error in this respect, much less plain error.

Appellants recognize that the Supreme Court has held that the enhanced penalties contained in section 1326(b) were mere sentencing factors and not elements of a separate offense. *See Almendarez-Torres v. United States*, 118 S.Ct. 1219, 1226 (1998). They point out that

14

Justice Thomas, one of the five justices who joined in the Supreme Court's *Almendarez-Torres* opinion, may no longer support its holding. *See Apprendi*, 120 S.Ct. at 2379. But no matter how much in doubt the continuing viability of *Almendarez-Torres* may be, that decision is not overruled unless and until the United States Supreme Court says it is. *State Oil v. Kahn*, 118 S.Ct. 275, 284 (1997). Until then, as conceded by the defendants-appellants, we are bound by *Almendarez-Torres*. Therefore, we reject defendants-appellants' argument that *Apprendi* prevents them from being sentenced to a term of imprisonment of more than two years.

## Conclusion

We hold that because intentional force against the person or property of another is seldom, if ever, employed to commit the offense of felony DWI, such offense is not a crime of violence within the meaning of 18 U.S.C. § 16(b). Accordingly, we VACATE the defendants-appellants' sentences and REMAND for resentencing.

VACATED and REMANDED