IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 01-41084
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FELIPE TREJO-GALVAN,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of Texas
_____

August 28, 2002

Before JOLLY, DUHÉ, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Felipe Trejo-Galvan pleaded guilty to one count of illegal re-entry into the United States in violation of 8 U.S.C. § 1326. The district court sentenced Trejo to twelve months and one day in prison. Based on its determination that Trejo's three prior misdemeanor convictions for driving under the influence were "crimes against the person," the district court also imposed a three-year term of supervised release under the enhanced penalty provision in 8 U.S.C. § 1326(b)(1). The question in this case is whether Trejo's convictions for driving under the influence are "crimes against the person," thereby triggering the enhanced penalty provision.

Because the relevant statute does not define the term "crimes against the person" and because no other circuit court has had occasion to interpret its meaning, we construe the term in accordance with its accepted common law definition. Specifically, we hold that a "crime against the person" is an offense that, by its nature, involves a substantial risk that the offender will intentionally employ physical force against another person.

Applying this definition to the instant case, we conclude that driving under the influence is not a crime against the person because it does not involve a substantial risk that the offender will intentionally use force against another person. As a consequence, the district court erred in imposing an enhanced term of supervised release under § 1326(b)(1) based on Trejo's three prior convictions for driving under the influence. We therefore vacate Trejo's supervised release sentence and remand the case to the district court for resentencing within the one-year maximum term of supervised release authorized for a violation of § 1326(a).

I

Felipe Trejo-Galvan has been deported twice from the United States -- once in January 1988 and again in September 2000. On February 8, 2001, Border Patrol agents arrested Trejo at a checkpoint on Interstate 35 just north of Laredo, Texas. Shortly thereafter, a grand jury returned a one-count indictment alleging that Trejo had illegally re-entered the United States after deportation in violation of 8 U.S.C. § 1326(a). On April 19, 2001,

Trejo pleaded guilty to the illegal re-entry charge.

After accounting for Trejo's acceptance of responsibility and his criminal record, the presentence report recommended a total offense level of ten -- which carried a sentencing range of ten to sixteen months in prison and up to one year of supervised release. The report also observed that the maximum term of imprisonment for violations of § 1326(a) is two years and the maximum term of supervised release is one year. The presentence report ultimately recommended a sentence of fourteen months in prison followed by one year of supervised release.

Following a brief hearing, the district court sentenced Trejo to twelve months and one day in prison. However, the district court found that Trejo's three prior misdemeanor convictions for driving under the influence were "crimes against the person." The district court held that these prior convictions therefore triggered the enhanced sentencing provision in 8 U.S.C. § 1326(b)(1), which authorizes up to three years of supervised release. The district court accordingly imposed a three-year term of supervised release in place of the one-year term recommended by the presentence report. This appeal followed.

## II

The sole issue presented in this case is whether Trejo's three prior misdemeanor convictions for driving under the influence are "crimes against the person" within the meaning of 8 U.S.C. § 1326(b)(1). The issue is one of first impression, both in our

3

circuit and in our sister circuits.  To be sure, neither the caselaw nor the legislative history of § 1326(b) offers any guidance at all as to the meaning of the term "crimes against the person."  The term does, however, have a particular meaning at common law.  Because there is no evidence that Congress rejected the common law definition of the term "crimes against the person," we presume that Congress intended to adopt it in § 1326(b)(1).[1]

At common law, the term "crimes against the person" refers to the "category of criminal offenses in which the perpetrator uses or threatens to use force" -- for example, "murder, rape, aggravated assault, and robbery."  <u>Black's Law Dictionary</u> 379 (7th ed. 1999).  Blackstone's Commentaries similarly limits the list of "offenses against the persons of individuals" to murder, mayhem,[2] forcible abduction and marriage, rape, sodomy, assault, battery, wounding, false imprisonment, and kidnaping.  <u>See</u> 4 William Blackstone, Commentaries on the Laws of England 205-19 (1st American ed. 1772)

---

[1] <u>See</u> <u>Taylor v. United States</u>, 495 U.S. 575, 592 (1990) ("[A] statutory term is generally presumed to have its common-law meaning."); <u>Morissette v. United States</u>, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.  In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.").

[2] Blackstone defines mayhem as "the violently depriving another of the use of such of his members, as may render him less able in fighting."  Blackstone, <u>supra</u>, at 205.

(reprint 1992); see also 1 Bouvier's Law Dictionary 729-30 (8th ed. 1984) (same).

These authorities indicate that, at common law, "crimes against the person" necessarily involve the intentional use or threat of physical force against a person.  So defined, "crimes against the person" would plainly not include Trejo's misdemeanor convictions for driving under the influence because the offenses did not involve the intentional use or threat of force.[3]

This definition of the statutory term "crimes against the person" is consistent with our jurisprudence construing the statutory term "crime of violence" under 18 U.S.C. § 16(b). Section 16 defines a "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In United States v. Chapa-Garza, 243 F.3d 921, 927 (5th Cir.

---

[3] Under both Georgia and Texas law, the crime of driving under the influence (or driving while intoxicated) requires only that the defendant operate a vehicle while intoxicated.  See Texas Penal Code Ann. § 49.04 (providing that a person is guilty of a misdemeanor if she operates a motor vehicle in a public place while intoxicated); Ga. Code Ann. § 40-6-391 (prohibiting "driv[ing] or . . . actual physical control of any moving vehicle while: (1) Under the influence of alcohol to the extent that it is less safe for the person to drive . . . [or] (5) The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control. . . .").

5

2001), we construed the term "crime of violence as defined in 16(b) [to] require[] recklessness as regards the substantial likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the offense." Id. We concluded that, under this view of the statute, a felony conviction under Texas law for driving while intoxicated is not a "crime of violence" within the meaning of § 16(b) because "intentional force against the person or property of another is seldom, if ever, employed to commit the offense of felony DWI."[4] Id. at 928.

The government urges a more expansive interpretation of "crimes against the person" based on the definition of "crime of violence" established in the Sentencing Guidelines. Under the Guidelines, a "crime of violence" is defined as an offense that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Thus, unlike § 16(b), the Guidelines definition of "crime of violence" focuses on the risk of physical

---

[4] More precisely, we held that a felony conviction for driving under the influence is not an "aggravated felony" under the sentencing guideline for illegal re-entry after deportation. The guidelines define "aggravated felony," in part, as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43).

6

injury rather than on the risk of physical force.  See United States v. Charles, __ F.3d __, No. 01-10113, 2002 WL 1764147 at *1 (5th Cir. July 31, 2002) (en banc).  Because driving under the influence involves reckless conduct that creates a serious risk of physical injury to others, it falls within the Guidelines definition of a "crime of violence."[5]

As we observed in Chapa-Garza, 243 F.3d at 925, there is a crucial distinction between the two definitions of "crime of violence" described above:  The Guidelines definition includes all offenses in which the defendant's reckless conduct creates a serious risk of physical injury, while § 16(b) reaches only those offenses in which the defendant is likely to use force intentionally against another person.  For the reasons that follow, we are persuaded that the statutory definition of "crime of violence" provides a more appropriate guidepost for defining the term "crimes against the person" in § 1326(b)(1).

First, the Guidelines definition extends considerably beyond the common law definition of "crimes against the person" because it includes offenses that do not involve (and are not even likely to involve) the intentional use or threat of force against another person.  In contrast, the definition of the term "crime of

---

[5] See United States v. DeSantiago-Gonzalez, 207 F.3d 261, 263-64 (5th Cir. 2000) (holding that three misdemeanor convictions for driving while intoxicated were "crimes of violence" under the Sentencing Guideline applicable to illegal reentry, U.S.S.G. § 2L1.2(b)(1)(B)).

violence" set out in § 16(b) -- that is, an offense that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" -- broadly tracks the common law definition of "crimes against the person."[6]  As noted earlier, we must presume that Congress intends to adopt the established common law meaning of a statutory term unless Congress explicitly rejects that meaning. See Taylor v. United States, 495 U.S. 575, 592 (1990).

Second, the plain language of the phrase "crimes against the person" connotes conduct that is *intentionally* directed against another person -- which would exclude reckless conduct with the likely effect of harming others.  Here again, the definition of "crime of violence" in § 16(b), as construed in Chapa-Garza, provides a more suitable reference point than the Guidelines definition because § 16(b) includes only those offenses that are likely to involve the intentional use of force.

---

[6] The two terms are not identical, however.  Unlike the common law definition of "crimes against the person," the definition of "crime of violence" under § 16(b) also includes offenses against the "property of another."  For example, in United States v. Galvan-Rodriquez, 169 F.3d 217, 219 (5th Cir. 1999), limited in part by United States v. Charles, __ F.3d __, No. 01-10113 (5th Cir. July 31, 2002) (en banc), this court held that unauthorized use of a motor vehicle is a "crime of violence" within the meaning of § 16(b).  We reasoned that unauthorized use of a vehicle involves "a substantial risk that *property* might be damaged or destroyed in the commission of the offense." Id. (emphasis added). Of course, the holding in Galvan-Rodriquez does not inform our decision here because a conviction for driving under the influence does not commonly involve the use of force against the vehicle in order to gain access to it.  See Chapa-Garza, 243 F.3d at 928.

8

In sum, we conclude that the term "crimes against the person" should be construed in accordance with its accepted common law meaning to include only those offenses that, by their nature, are likely to involve the intentional use or threat of physical force against another person. Under this definition, Trejo's misdemeanor convictions for driving under the influence are not "crimes against the person." See Chapa-Garza, 243 F.3d at 927-28; cf. Solem v. Helm, 463 U.S. 277, 280 (1983) (noting that, for purposes of Eighth Amendment proportionality review, a "third-offense driving while intoxicated" is not "a crime against a person"). Consequently, Trejo is not eligible for an enhanced sentence of supervised release under § 1326(b)(1).

### III

Because Trejo's three misdemeanor convictions for driving under the influence were not "crimes against the person" under § 1326(b)(1), the district court erred in sentencing Trejo to a term of supervised release in excess of the maximum term authorized for a conviction under § 1326(a). Accordingly, we VACATE Trejo's three-year term of supervised release and remand the case to the district court for resentencing in a manner not inconsistent with this opinion.

VACATED and REMANDED.

9