EMILIO M. GARZA, Circuit Judge,
dissenting:
By focusing on the trees, the majority opinion has lost sight of the forest. The majority opinion focuses so narrowly on one aspect of the panel opinion in United States v. Chapa-Garza, 243 F.3d 921 (5th Cir.2001), that it loses sight of the text of 18 U.S.C. § 16(b) as well as the message in the California statute under which Medina was previously convicted. The purpose of that state statute is, simply, to outlaw carrying a deadly instrument of violence: a concealed dagger “capable of ready use as a stabbing weapon that may inflict great bodily injury or death.” CalPenal Code §§ 12020(a), (c)(24). The only purpose of possessing a concealed dagger is the application of “physical force ... against the person of another” when the need arises. See 18 U.S.C. § 16(b) (defining “crime of violence” as an offense that, “by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense”). Thus, contrary to the majority opinion’s conclusion, Medina’s prior conviction for unlawfully carrying a concealed dagger (“the concealed dagger offense”) qualifies as a crime of violence under § 16(b).
I agree with the majority opinion that we are guided in our interpretation of § 16(b) by Chapad-Garza. But a careful application of Chapa-Garza’s logic demonstrates that the possession of a concealed dagger qualifies as a crime of violence. Chapad-Garza held that, to constitute a crime of violence under § 16(b), the crime must involve “reckless disregard for the probability that intentional force may be employed.” 243 F.3d at 924 (interpreting § 16(b)’s “substantial risk that physical force ... may be used” language). My conclusion (that the possession of a concealed dagger is a crime of violence) accords with this central holding. In fact, the concealed dagger offense involves more than simple recklessness: it requires that the offender “knowingly and intentionally” carry the concealed dagger. People v. Rubalcava, 23 Cal.4th 322, 96 Cal.Rptr.2d 735, 1 P.3d 52, 57 (2000).
The majority opinion sidesteps the clear import of Chapa-Garza by focusing too narrowly on a single section of the opinion. As the majority opinion observes, Chapa-Garza suggested that the phrase “in the course of committing the offense” in § 16(b) implies “force that may be used to perpetrate the offense.” Chapa-Garza, 243 F.3d at 927. The majority opinion mechanically applies this alleged gloss on the meaning of § 16(b) to conclude that the concealed dagger offense is not a crime of violence. According to the majority opinion, Chapa-Garza dictates that the concealed dagger offense does not qualify as a crime of violence under § 16(b) because the offender “perpetrates the crime once he takes possession of and conceals the dirk or dagger,” making it “unlikely that any physical force would be used in the process.”[1]
*650 The majority opinion errs in concluding that a criminal completes the offense as soon as he conceals the dagger. The unlawful possession of a dangerous weapon is an ongoing course of conduct. See United States v. Walker, 27 F.3d 417, 419-20 (9th Cir.1994) (holding that the defendant’s offense of illegal possession of a firearm “would not have been completed until the date set forth in the indictment or until he relinquished possession of the machine gun and silencer”); United States v. Horodner, 993 F.2d 191, 193 (9th Cir.1993) (reasoning that gun possession is a “course of conduct,” not an act); see also United States v. Fleischli, 305 F.3d 643, 658 (7th Cir.2002) (“Possession of a firearm is a continuing offense which ceases only when the possession stops.”); United States v. Finley, 245 F.3d 199, 207 (2d Cir.2001) (holding that possession of shotgun is a continuing offense); United States v. Maxim, 55 F.3d 394, 397-98 (8th Cir.1995) (holding that criminal statutes prohibiting felons from possessing firearms and prohibiting possession of machine guns are both continuing offenses that, by their nature, do not terminate until the date of the indictment or the voluntary termination of the illegal activity). Thus, an individual continues to commit the offense as long as he holds onto the weapon. And, as the California legislature recognized, the entire time the individual possesses the concealed dagger, there is a substantial, continuing risk that the offender will stab an unsuspecting victim.[2]
This continuing risk of physical violence distinguishes the concealed dagger offense from the offense of unlawfully carrying a firearm into an establishment licensed to sell liquor, the offense that was the subject of our decision in United States v. Hernandez-Neave, 291 F.3d 296 (5th Cir.2001). In Hemandez-Neave, we applied Chapa-Garza and reasoned that the Texas felony offense of unlawfully carrying a firearm into an establishment licensed to sell alcoholic beverages was not a crime of violence under § 16(b). The court reasoned that physical force is not needed to “complete” this crime, since “the crime is completed by simply stepping over a threshold while carrying such a weapon.” Id. at 299. There is no “threshold” requirement for “completing” the concealed dagger offense, as there is for the offense of unlawfully carrying a firearm into an establishment *651 licensed to sell liquor. See id. Thus, contrary to the assertion of the majority opinion, our holding in Hemandez-Neave does not dictate a particular outcome in this case.[3]
The majority opinion’s rigid reliance on a few sentences in Chapar-Garza indicates that the majority opinion overlooks the substantial differences between the offenses at issue in Chapar-Garza and the present case. Chapa-Garza involved a non-violent instrument — a vehicle; this case involves a violent instrument — a concealed dagger.[4] It is easy to see that carrying a concealed dagger gives rise to a greater risk of intentional physical force than operating a vehicle while intoxicated. A vehicle’s main purpose, even if driven by one who is intoxicated, is transportation, not violence. See Chapa-Garza, 243 F.3d at 927 (“While the victim of a drunk driver may sustain physical injury from physical force being applied to his body as a result of collision with the drunk driver’s errant automobile, it is clear that such force has not been intentionally ‘used’ against the other person by the drunk driver at all, much less in order to perpetrate any crime, including the crime of felony DWL”). A concealed dagger, however, is fundamentally an instrument of violence. Its primary purpose under the California statute is to inflict “great bodily injury or death.” CalPenal Code § 12020(c)(24). Indeed, the carrying of a concealed dagger is closely associated with gang violence: the California legislature broadly defined “dirk or dagger” because of its concern that gang members who carry lethal knives hidden beneath their clothing would be immune from arrest and prosecution under any other definition. See Rubalcava, 96 Cal.Rptr.2d 735, 1 P.3d at 57 (citing Sen. Rules Com., 3d reading analysis of Assem. Bill No. 1222 (1995-1996 Reg. Sess.), as amended May 31, 1995, p. 4).[5] Thus, the concealed dagger offense, by its nature, involves a substantial risk of physical force.
If the majority opinion is correct that Chapar-Garza’s interpretation of § 16(b) compels the conclusion that the concealed dagger offense is not a crime of violence, then the logic of Chapa-Garza is inconsistent with the plain language of § 16(b). Section 16(b) defines a crime of violence as an offense “that, by its nature, involves a substantial risk that physical force against *652 the person or property of another may be used in the course of committing the offense.” It is unrealistic to conclude, as the majority opinion does, that carrying a dagger does not “involve[ ] a substantial risk that physical force ... may be used” when the entire purpose of the California statute is to punish those who would use such a dagger to “cause great bodily injury or death.” By its very nature, the act of unlawfully carrying a concealed dagger creates a substantial risk that physical violence “may be used in the course of’ the offense.[6] Therefore, Medina’s prior California conviction for unlawfully carrying a concealed dagger qualifies as a crime of violence under § 16(b).
For the foregoing reasons, I cannot agree with the majority opinion that Cha-par-Garza compels the conclusion that carrying a concealed dagger is not a crime of violence under 18 U.S.C. § 16(b). If, however, the majority opinion is correct that Chapar-Garza dictates this result, then I believe that en banc reconsideration is necessary to bring our jurisprudence in line with the plain language of § 16(b). I, therefore, respectfully dissent from the majority’s decision to overturn the district court’s sound judgment that Medina’s concealed dagger offense qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43).

. The majority opinion goes even one step further by concluding that the concealed dagger offense does not qualify as a crime of violence "because it is difficult to imagine how one would use force against the person or property of another with the dirk or dagger still concealed upon his or her person.” (citations and internal quotation marks omitted). *650 I fear that this assertion trumps reality. One could easily envision a scenario where a gang member is emboldened to start a fight, knowing that the concealed dagger in his possession will enable him to overpower his unsuspecting victim. See infra note 5.

. This reasoning has support in our case law. We have held that the unlawful possession of certain instruments of violence, such as an unregistered sawed-off shotgun or pipe bomb, creates a substantial risk of violence during the course of possession. See United States v. Rivas-Palacios, 244 F.3d 396, 397-98 (5th Cir.2001) (holding that the Texas crime of possession of an unregistered firearm (a sawed-off shotgun) is a crime of violence as defined in § 16(b), and reasoning that “the unlawful possession of any unregistered firearm, a sawed-off shotgun in this case, 'involves a substantial risk that physical force against the person or property of another’ will occur”); United States v. Jennings, 195 F.3d 795, 798-99 (5th Cir.1999) (holding that possession of an unregistered pipe bomb was a crime of violence that could serve as a predicate act for the offense of carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and reasoning that "possession of an unregistered pipe bomb, by its very nature, creates a substantial risk of violence”). Although Rivas-Palacios did not apply the (then days-old) Chapa-Garza framework for interpreting § 16(b), see United States v. Hernandez-Neave, 291 F.3d 296, 300 (5th Cir.2001), and Jennings was decided before Chapa-Garza and did not apply § 16(b), the reasoning in these two cases helps us assess whether possession of an instrument of violence, such as a concealed dagger, creates a "substantial risk” of violence.

.There is another significant difference between Hemandez-Neave and the present case. The intent element of the offense in Heman-dez-Neave, like the intent element of the offense in Chapa-Garza, relates only to the offender’s non-violent act. See Hernandez-Neave, 291 F.3d at 299 (reasoning that the “intent portion of the crime” relates only to the offender’s intent to enter the establishment while carrying a firearm, a non-violent act). In this case, by contrast, the intent requirement relates to an act that is violent by nature: carrying a concealed dagger. One would "knowingly and intentionally” carry a concealed dagger only to hide his willingness to use that dagger to inflict "great bodily injury or death” if and when the opportunity presents itself. See Cal.Penal Code § 12020(c)(24). Thus, it is clear that one who commits the concealed dagger offense by "knowingly and intentionally” carrying a concealed dagger is being more than reckless regarding the probability that he will intentionally use physical force in the course of his possession of the dagger. See Chapa-Garza, 243 F.3d at 924.

. A dagger is a close-in fighting weapon. An offender would need to get within arm’s length of his victim before the dagger could be effectively used. Concealment is essential to lull an unsuspecting victim into a false sense of security.

. The majority opinion notes that the concealed dagger was “adjustable.” In fact, the PSR explains that the dagger was "sharpened on both sides and was adjustable to be able to fit into a fist or to be straightened out in a locked position.” Clearly, this type of weapon is intended for gang violence.

. Common sense tells us that a confrontation is more likely to escalate to violence when one of the participants is carrying a concealed weapon. When a person is carrying a concealed dagger, that may well embolden the person to instigate a violent confrontation. The individual may use physical force (i.eby striking an adversary) without ever drawing the weapon. In this additional respect, carrying a concealed dagger creates a "substantial risk that physical force” will be used while the individual is committing the offense.