# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 1, 2011

No. 10-50176

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ANTONIO VILLANUEVA-DIAZ,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before GARZA, STEWART, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Antonio Villanueva-Diaz appeals from his conviction for unlawfully reentering the United States following removal in violation of 8 U.S.C. § 1326. Villanueva-Diaz, formerly a lawful permanent resident alien in the United States, was ordered removed by an immigration judge ("IJ") in October 1998 after his third conviction under Texas state law for driving while intoxicated ("DWI"). The Board of Immigration Appeals ("BIA") affirmed the removal order in November 1999, and Villanueva-Diaz was removed to Mexico in November 2000. He was found in the United States in 2009 and charged with unlawful reentry. Villanueva-Diaz contends that his 1999 removal order was obtained

No. 10-50176

unconstitutionally such that his indictment for violating § 1326 was improper. We AFFIRM.

## I. Facts and Procedural History

In September 1975, Antonio Villanueva-Diaz, a native and citizen of Mexico, was admitted into the United States as a lawful permanent resident. In April 1997, Villanueva-Diaz pleaded guilty in Texas state court to his third DWI offense, a felony, and received a nine-year suspended sentence. However, in September 1997, he pleaded true to the allegation that he had violated the terms of his supervision, and the nine-year term of imprisonment was enforced.

In June 1998, removal proceedings were instituted against Villanueva-Diaz based upon the allegation that his DWI conviction qualified as an "aggravated felony" under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(F), that is, as a "crime of violence" under 18 U.S.C. § 16.[1]  During the removal proceedings, Villanueva-Diaz was represented by attorney Patrick Dunne. The IJ ordered Villanueva-Diaz to be removed to Mexico in accordance with that allegation and denied his application for cancellation of removal. On November 4, 1999, the BIA affirmed the IJ's decision.

In its decision, the BIA cited to this court's then-binding decision in *Camacho-Marroquin v. INS*, 188 F.3d 649, 652 (5th Cir. 1999), *withdrawn*, 222

---

[1] Section 1227(a)(2)(A)(iii) provides that an "alien who is convicted of an aggravated felony at any time after admission is deportable."   Section 1101(a)(43) in turn defines "aggravated felony," including both a range of specified offenses and a residual definition in subsection (F), namely: "a crime of violence (as defined in [18 U.S.C. § 16], but not including a purely political offense) for which the term of imprisonment [is] at least one year."  Section 16 offers the relevant substantive definition:

The term "crime of violence" means—
      (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
      (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

No. 10-50176

F.3d 1040 (5th Cir. 2000), in which we held that a Texas felony DWI offense was a crime of violence that qualified as an aggravated felony, thereby rendering an alien convicted of that offense removable. *Camacho-Marroquin* was withdrawn at the alien's request on July 11, 2000. 222 F.3d at 1040. On November 2, 2000, Villanueva-Diaz was removed from the United States.  On March 1, 2001, this court held in *United States v. Chapa-Garza*, 243 F.3d 921, 927  (5th Cir. 2001), that a Texas felony DWI offense is not a crime of violence as defined by 18 U.S.C. § 16(b) and therefore did not constitute an aggravated felony for purposes of § 1101(a)(43)(F) and United States Sentencing Guidelines Manual § 2L1.2, which employs the § 1101(a)(43) definition.  Although *Chapa-Garza* was a sentencing appeal, no one disputes that, had *Chapa-Garza* been decided before Villanueva-Diaz's original removal, our holding that Texas felony DWI was not a crime of violence under § 16(b) and § 1101(a)(43)(F) would also have established that Villanueva-Diaz's conviction was not a removable offense under § 1227(a)(2)(A)(iii).

In July 2009, Villanueva-Diaz was found in a county jail in Texas.  He was charged with being unlawfully present in the United States after being previously removed.   He filed a motion to dismiss the indictment alleging that he was denied due process in his removal proceedings because Dunne had never informed him of the BIA's decision and Villanueva-Diaz never received a copy of the BIA's decision.  He alleged that, if he had known of the BIA's affirmance, he would have filed a petition for review and could have benefitted from this court's ruling in *Chapa-Garza*, which would have had the effect of restoring his legal resident status and preventing his removal. Villanueva-Diaz further noted that, subsequent to his removal, Dunne had been disbarred based upon Dunne's deficient representation of several other clients.

Other than materials from the immigration proceeding itself, the only evidence presented in the district court regarding what happened in his

No. 10-50176

immigration proceeding came from Villanueva-Diaz's declaration in which he stated that he appeared before the IJ and was ordered deported. He then states that his "lawyer told me that he was going to appeal the decision. I never heard from the lawyer again. I never learned what happened to my appeal. On November 2, 2000, immigration agents took me from the jail and deported me to Mexico. They told me that I had lost my appeal. If I had known that I could appeal my deportation order, I would have asked my family to continue the appeal." The district court record also contains a copy of Dunne's 2002 disbarment order; Dunne did not testify or file an affidavit in the district court.

The immigration record reveals that Dunne did, in fact, file an appeal of the IJ's ruling to the BIA and lost. Notice of the BIA's decision was sent to him. No evidence suggests that Dunne did not receive the BIA's decision in time to appeal the case to our court.

After conducting a hearing on the motion, the district court denied Villanueva-Diaz's motion to dismiss. Although the district court noted that the result was "very inequitable," the court found that Dunne's neglect in failing to forward the BIA decision to Villanueva-Diaz or to file a petition for review on his behalf could not be attributed to the government. Accordingly, the district court stated that it was "left with no choice but on legal grounds to deny the motion to dismiss the indictment."

Villanueva-Diaz entered a conditional guilty plea to the sole charge against him, thereby preserving his right to appeal the denial of his motion to dismiss. The district court sentenced him to time served and one year of supervised release. Villanueva-Diaz filed a timely notice of appeal.

## II. Standard of Review

We review de novo the district court's denial of Villanueva-Diaz's motion to dismiss the indictment as well as his underlying constitutional claims. *See United States v. Kay*, 513 F.3d 432, 440 (5th Cir. 2007). We accept all factual

No. 10-50176

findings made by the district court in connection with that ruling unless clearly erroneous. *See United States v. Thomas*, 15 F.3d 381, 382–83 & n.4 (5th Cir. 1994).

## III.  Discussion

### A.  *Jurisdiction*

The question of whether an appeal is moot is jurisdictional. *United States v. Lares-Meraz*, 452 F.3d 352, 354–55 (5th Cir. 2006) (per curiam). "This Court must raise the question of mootness *sua sponte* when, as here, it is not raised by a party, and the Court reviews the question *de novo.*" *Id.* at 355.[2]  By the time of oral argument in this case, Villanueva-Diaz had only a few days of supervised release left, and that time has now expired. The conclusion of his supervised release raises the question of whether Villanueva-Diaz's appeal is moot. We conclude that it is not.

As Villanueva-Diaz notes, he is not challenging the term of supervised release in and of itself, which challenge might be mooted by the passage of time. Instead, he is challenging his conviction, from which he contends he continues to suffer collateral consequences.  The Supreme Court has recognized a presumption "that most criminal convictions do in fact entail adverse collateral legal consequences," and that "[t]he mere 'possibility' [of such consequences] is enough to preserve a criminal case from ending ignominiously in the limbo of mootness," even after the immediate legal consequences—that is, the criminal sentence—have expired.  *See Sibron v. New York*, 392 U.S. 40, 55 (1968) (internal quotations omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 11–12 (1998) (affirming validity of *Sibron* presumption).

The Government's arguments to the contrary are unavailing here.  First, the Government cites *United States v. Rosenbaum-Alanis*, 483 F.3d 381, 383 (5th

---

[2]  We noted this issue and requested supplemental briefing from the parties.

No. 10-50176

Cir. 2007), in which we held that the appellant's appeal of his *sentence* was moot because he had "completed his term of imprisonment and ha[d] been deported." *Id.* at 383.  By contrast, here, Villanueva-Diaz seeks the vacatur of his *conviction* and dismissal of the indictment against him.  Second, the Government argues that Villanueva-Diaz in fact suffers no collateral consequences from his conviction because he resides in Mexico and not the United States.  Villanueva-Diaz does not, however, reside in Mexico willingly, and he would eventually be able to reapply for admission to the United States but for his criminal conviction in this case.  *See* 8 U.S.C. § 1101(a)(43)(O) (defining "aggravated felony" to include a conviction under § 1326); 8 U.S.C. § 1182(a)(9)(A)(i), (ii) (rendering aliens convicted of aggravated felonies permanently inadmissible to the United States).  We have previously held that the admissibility bar imposed by § 1182(a)(9)(A) is a "concrete disadvantage" that avoids mootness.  *See Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir. 2004).  Accordingly, we conclude that this appeal is not moot.

B.  *Merits*

1.  Exhaustion

The Government argues that Villanueva-Diaz's collateral attack on his removal must fail because Villanueva-Diaz did not first exhaust his administrative remedies as required by 8 U.S.C. § 1326(d)(1).  The Government suggests that Villanueva-Diaz should have filed a motion to reopen with the BIA.  We conclude that Villanueva-Diaz was not required to do so on the facts of this case.  By its terms, the statute only requires an alien to "exhaust[] any administrative remedies *that may have been available* to seek relief against the [challenged] order."  § 1326(d)(1) (emphasis added).  Villanueva-Diaz's uncontroverted testimony was that he only became aware of the facts giving rise to his collateral challenge while being physically removed from the United States; once removed, the BIA would have refused to take jurisdiction of his

motion to reopen. *See* 8 C.F.R. § 1003.2 ("A motion to reopen . . . shall not be made by or on behalf of a person who is the subject of . . . removal proceedings subsequent to his or her departure from the United States."); *see also Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675–76 (5th Cir. 2003) (affirming BIA's interpretation of predecessor regulation as jurisdictional as reasonable). The reopening procedure of which the Government contends Villanueva-Diaz should have availed himself was not "available" to him within the meaning of § 1326(d)(1); thus that subsection poses no bar to our review of Villanueva-Diaz's challenge on the merits.

    2. Fundamental Unfairness

By statute, Villanueva-Diaz must show that "the deportation proceedings at which the [removal] order was issued improperly deprived [him] of the opportunity for judicial review[,] and [that] the entry of the order was fundamentally unfair." § 1326(d)(2), (3). This rule effectively codifies the Supreme Court's decision in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), which, as interpreted by our precedent, permits a collateral constitutional challenge if the alien can "establish that (1) the prior hearing was 'fundamentally unfair'; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000). The question to which the parties' argument was primarily directed is whether the prior hearing was "fundamentally unfair."

Villanueva-Diaz's sole contention on appeal is that he was denied due process under the Fifth Amendment because his attorney's negligence prevented him from appealing the BIA's ruling to this court. During oral argument, Villanueva-Diaz's current counsel vociferously disclaimed any argument that the Fifth Amendment imports a freestanding right to effective assistance of counsel

in a civil case. Such an argument, no doubt, would run headlong into *Coleman v. Thompson*, 501 U.S. 722 (1991), where the Court found no right to effective assistance of counsel in a civil habeas case despite its use to challenge a criminal conviction. *Id.* at 752–54. In any event, we need not consider such a broad, general claim given Villanueva-Diaz's failure to advance it. Nor need we consider whether there can ever be a circumstance where an attorney's neglect is such that his client's due process rights are violated in a civil case.

Instead, we turn to the argument presented here—that Villanueva-Diaz's lack of personal notice of the BIA's decision rendered the proceedings against him "fundamentally unfair." The essence of "due process" is notice and a fair opportunity to be heard. *See, e.g.*, *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002) (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98 (1953)). Yet Villanueva-Diaz does not attack the fairness of any of the fora which were available to him: the original immigration court, the BIA, or this court. His argument, instead, is that he personally failed to received notice of the BIA's decision because of his attorney's neglect, and that this failure on his attorney's part rendered the proceedings against him "fundamentally unfair."

Villanueva-Diaz points to some of our prior decisions, arguing that these cases support his "fundamental fairness" argument. *See Berthold v. INS*, 517 F.2d 689, 690–92 (5th Cir. 1969); *Paul v. INS*, 521 F.2d 194, 197–201 (5th Cir. 1975); *Goonsuwan v. Ashcroft*, 252 F.3d 383, 385 n.2 (5th Cir. 2001); *Assaad v. Ashcroft*, 378 F.3d 471, 475–76 (5th Cir. 2004); *Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006). In reality, none of these cases holds that the ineffective assistance—nor, indeed, *any* action or inaction—on the part of a petitioner's own privately-retained counsel in an immigration proceeding in fact violates the Fifth Amendment's due process requirement.[3] The state of our precedent is thus

---

[3] The holding in each of the cases cited avoids, often explicitly, this question. We have done so by: (1) assuming that such a right might exist but finding no violation of it on the facts

No. 10-50176

accurately and succinctly summarized in *Mai*: "Although an alien has no Sixth Amendment right to effective counsel during removal proceedings, this court has repeatedly assumed without deciding that an alien's claim of ineffective assistance may implicate due process concerns under the Fifth Amendment. . . . [T]he source and extent of this due process right remain unclear." 473 F.3d at 165 (internal citations omitted). Any suggestion our prior decisions make to the contrary, *cf. Goonsuwan*, 252 F.3d at 385 n.2 ("[An alien's] right to due process is violated when 'the representation afforded them was so deficient as to impinge upon the fundamental fairness of the hearing, and that, as a result, the alien suffered substantial prejudice." (citing *Paul*, 521 F.2d at 198)), is "dicta." *Gutierrez-Morales v. Homan*, 461 F.3d 605, 609 (5th Cir. 2006).

Turning to the actual process provided for Villanueva-Diaz's proceeding, we find that, by regulation, notice of the BIA decision was required to be sent to the attorney if an immigrant was represented by counsel. 8 C.F.R. §§ 292.5(a), 1292.5(a). The "unfairness" of which Villanueva-Diaz complains stems from the BIA's compliance with this regulation in his case. We discern nothing "fundamentally unfair" about such a procedure. Indeed, the same or similar notice rule is in place in the federal courts and all the state courts within our circuit. *See* FED. R. APP. P. 25(b) ("Service on a party represented by counsel must be made on the party's counsel."); FED. R. CIV. P. 5(b)(1) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders [otherwise]."); TEX. R. CIV. P. 21a; MISS. R. CIV.

---

of the case, *see Paul*, 521 F.2d at 197–201; (2) resolving the case on other grounds entirely, *see Goonsuwan*, 252 F.3d at 390–91(dismissing for failure to exhaust); *Berthold*, 517 F.2d at 690–92 (finding argument waived); (3) acknowledging that the BIA has the authority to *choose* to vacate immigration orders for attorney misconduct regardless of whether the Fifth Amendment requires it do so, and then assessing the BIA's compliance with its own procedure as a matter of process and administrative law, *see Mai*, 473 F.3d at 165; or (4) finding that the alien sought only discretionary relief in which he had no liberty interest protectable under the Fifth Amendment, *see Assaad*, 378 F.3d at 475–76.

P. 5(b)(1); LA. CODE CIV. PROC. ANN. art. 1313.  The rule that contact with a represented party should be through his lawyer is so well established in American jurisprudence that attorneys are generally prohibited by ethical rules from contact with the opposing party if represented by counsel.  *See generally* MODEL RULES OF PROF'L CONDUCT R. 4.2 (2002); *see also* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 4.02 (2005).

We cannot find a process that is so entrenched in our system of justice to be "fundamentally unfair."  Simply put, the process provided for Villanueva-Diaz outlined a course of action—notice to counsel for a represented party of a BIA decision—which is fair and which was followed.  Villanueva-Diaz received the process he was due from the Government.[4]  The cause of any further unfairness is attributable to Villanueva-Diaz's retained counsel alone.  As for errors of his own counsel, Villanueva-Diaz has articulated no basis for us to distinguish the clear instruction of *Coleman* that "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must [therefore] bear the risk of attorney error" absent a constitutional right to effective assistance of counsel—which Villanueva-Diaz disclaims—that would allow us to impute that error to the government.  501 U.S. at 753–54 (citing *Link*, 370 U.S. at 634).  Under the circumstances of this case, we conclude that the district court did not err in finding that Villanueva-Diaz's deportation proceedings were not "fundamentally unfair."

---

[4] Imputing notice to counsel to his client is consistent with general principles of agency applicable to the attorney-client relationship: a client "is deemed bound by the acts of his lawyer-agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) (finding no violation of due process in dismissal of civil suit for failure to prosecute based on attorney error); *see also Ogunfuye v. Holder*, 610 F.3d 303, 306 n.3 (5th Cir. 2010) (noting that §§ 292.5 and 1292.5 are proper in light of *Link*).

No. 10-50176

3. Speculative Prejudice

Even were we to assume arguendo that Villanueva-Diaz's attorney's failure to notify him of the BIA's decision could support a claim of lack of fundamental fairness, Villanueva-Diaz cannot establish prejudice. He concedes that he would have to show deficient conduct on the part of his counsel as well as prejudice. To show "prejudice" in this context, Villanueva-Diaz would have had to demonstrate that there is "a reasonable likelihood that but for the errors complained of [he] would not have been deported." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999). While we agree that Dunne should have told him of the BIA decision and his option to petition this court for review, we note that "what would have happened next" is an exceedingly speculative inquiry under the timeline here. At the time the BIA decision came down, our jurisprudence was clear that Villanueva-Diaz's DWI conviction was an aggravated felony. Thus, in this same hypothetical conversation that Dunne should have had with Villanueva-Diaz about the BIA's decision, he would also have had to inform Villanueva-Diaz that Fifth Circuit precedent was squarely against him. It is sheer speculation to say that Villanueva-Diaz would then have proceeded on, perhaps pro se from his prison cell, and "would have been Chapa-Garza" as his current counsel contended at oral argument. Thus, while we now have the benefit of hindsight, judged at the time of the BIA decision, Villanueva-Diaz's case was wholly foreclosed, and his attorney's advice not to file an appeal would not have been a wholesale deprivation of due process.

We understand the district judge's consternation that this "seems inequitable" given the benefit of hindsight. Our review over immigration decisions is not as a "court of equity." Nor is that our role in a criminal appeal seeking to collaterally attack an immigration decision. As a three-time DWI offender who unlawfully reentered the United States rather than applying for

11

No. 10-50176

readmission, Villanueva-Diaz is not altogether an innocent bystander to his problems.  In any event, the result reached is what the law requires.

For the foregoing reasons, we AFFIRM.