EDITH BROWN CLEMENT, Circuit Judge:
This appeal contemplates the application of a sentence enhancement to a defendant’s sentence for being unlawfully present in the United States in violation of 8 U.S.C. § 1326 (2000). The Pre-Sentenc-ing Report (“PSR”) recommended that a sixteen-level enhancement be added to a base offense level of eight because Enrique Vargas-Duran (“Vargas-Duran”) previously had been convicted of intoxication assault under Texas law. Vargas-Duran objected to the enhancement, arguing it was improper because intoxication assault was not a crime of violence under § 2L1.2 of the U.S. Sentencing Guidelines Manual (“U.S.S.G.”). The district court agreed with the PSR’s recommendation and enhanced Vargas-Duran’s sentence. On appeal, a majority of a panel of this Court affirmed the district court, holding that intoxication assault required the use of force, and, as such, met the U.S.S.G. definition of a crime of violence.
This Court now examines and clarifies the law with respect to sentencing enhancements which require “as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. § 2L1.2, Application Note l(B)(ii)(I) (2001). We hold that the “use” of force requires that a defendant intentionally avail himself of that force. *600 We further hold that the intentional use of force must be an element of the predicate offense if the predicate offense is to enhance a defendant’s sentence. Because the intentional use of force is not an element of the crime of Texas intoxication assault, we VACATE Vargas-Duran’s sentence and REMAND his case for resen-tencing in accordance with this opinion.
I. FACTS AND PROCEEDINGS
In 1996, Vargas-Duran, a citizen of Mexico, was convicted of intoxication assault in Texas state court. Under the Texas statute, a person was guilty of intoxication assault when that person, “by accident or mistake, while operating an aircraft, watercraft or motor vehicle in a public place while intoxicated, by reason of that intoxication causes serious bodily injury to another.” Tex. Penal Code Ann. § 49.07 (1994).[1] Following his conviction and sentence, Vargas-Duran was deported from Hidalgo, Texas to Mexico.
On June 24, 2001, Vargas-Duran was again found in Texas. He pleaded guilty to being unlawfully present in the United States in violation of 8 U.S.C. § 1326(a) and (b)(2).[2] A PSR was prepared using the 2001 version of the Federal Sentencing Guidelines. The base level of Vargas-Duran’s offense was eight; the PSR recommended a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2. Section 2L1.2(b)(l)(A)(ii) provides for a sixteen-level enhancement if “the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is a ... crime of violence.” The Application Notes define “crime of violence” either as one of a list of enumerated offenses or as “an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.” U.S.S.G. Application Note l(B)(ii)(I). The PSR recommended that Vargas-Duran’s 1996 conviction for intoxication assault be considered a crime of violence for purposes of enhancing his sentence.
The district court agreed with the PSR. In adopting the PSR’s recommendation, the district court sentenced Vargas-Duran to a sixty-four month term of imprisonment and a three-year term of supervised release. Vargas-Duran timely appealed.
*601 On January 16, 2003, a majority of a panel of this Court affirmed the enhancement of Vargas-Duran’s sentence. United States v. Vargas-Duran, 319 F.3d 194, 199 (5th Cir.2003), vacated and reh’g granted by 336 F.3d 418 (5th Cir.2003). As a preliminary matter, the panel majority observed that because intoxication assault is not one of the enumerated offenses under § 2L1.2, Vargas-Duran’s sentence could only be enhanced if the crime of intoxication assault had “as an element the use, attempted use, or threatened use of physical force against the person of another.” 319 F.3d at 196 (citations omitted). Next, the majority reiterated the rule that this Court “need not discuss the facts underlying Vargas-Duran’s prior conviction, since we ‘look only to the fact of conviction and the statutory definition of the prior offense’ to determine whether a prior conviction qualifies as a predicate offense for sentencing enhancement purposes.” Id. (citations omitted).
Because intoxication assault requires that an intoxicated offender “cause[ ] serious bodily injury to another,” the majority concluded that the crime has as an element the use of force. 319 F.3d at 196. Observing that neither Vargas-Duran nor any Texas decision gave an example of an instance in which a defendant was convicted of intoxication assault without using physical force against a person, the majority concluded that causing serious bodily injury “qualifie[d]” as using force. Id. at 196-97.
Vargas-Duran’s primary contention was that “use of force” implied the intentional use of force. Relying on this Court’s decision in United States v. Chapa-Garza, 243 F.3d 921 (5th Cir.2001), in which we held that the sentence of a defendant with a prior conviction for driving while intoxicated (“DWI”) could not be enhanced as a crime of violence, Vargas-Duran argued that the approach endorsed by Chapa-Garza similarly should apply to intoxication assault. 319 F.3d at 197.
The majority disagreed with Vargas-Duran’s proposed use of Chapar-Garza on three grounds. First, the majority distinguished Chapa-Garza by observing that Chapa-Garza did not purport to interpret § 2L1.2.[3] 319 F.3d at 197. As a second point of distinction, the majority pointed out that the crime of felony DWI, which is committed when a defendant with two pri- or convictions begins operating a vehicle while intoxicated, could be committed without the use of force. Id. at 198. As a third point of distinction the majority emphasized that the felony DWI statute at issue in Chapa-Garza was not analyzed under 18 U.S.C. § 16(a), the language of which is similar to § 2L1.2, Application Note l(B)(ii)(I). Id. The majority characterized § 16(b), under which Chapa-Garza ivas decided, as a “catch-all” provision, and opined that “Chapcu-Garza’s analysis of § 16(b) would have been entirely unnecessary had the crime of Texas felony DWI contained as an element the ‘use of force,’ as does the Texas crime of intoxication assault at issue in this case.” Id. The *602 majority therefore concluded that “[i]n light of the plain language of the revised guideline and its commentary,” no state of mind requirement should be implied in § 2L1.2. Id. at 199.
The dissent from the panel majority’s ruling in Vargas-Duran argued that “use”, by its very definition, requires intent. 319 F.3d at 201 (Clement, J., dissenting). Because intoxication assault encompasses an act that takes place “by accident or mistake”, the dissent reasoned that intoxication assault does not necessarily require the use, attempted use, or threatened use of force. Id. at 204.
Vargas-Duran timely filed a petition for rehearing en banc on January 30, 2003. By court order, rehearing en banc was granted on June 26, 2003, and the panel opinion was vacated. United States v. Vargas-Duran, 336 F.3d 418 (5th Cir.2003).
II. STANDARD OF REVIEW
Because the grant of en banc rehearing vacates the earlier panel decision, we review de novo a district court’s legal conclusions or interpretations of the meaning of a guideline. United States v. Griffin, 324 F.3d 330, 365 (5th Cir.2003). We therefore review a challenge to the district court’s application of § 2L1.2 de novo. United States v. Rodriguez-Rodriguez, 323 F.3d 317, 318 (5th Cir.2003).
III. DISCUSSION
A. “Use of Force”
The first issue before the Court is whether “the use, attempted use, or threatened use of physical force against the person of another,” U.S.S.G. § 2L1.2, Application Note l(B)(ii)(I), means that the predicate offense requires that a defendant intentionally avail himself of that force. We hold that it does.
It is an elementary rule of statutory construction that “the words of a statute will be given their plain meaning absent ambiguity.” Texas Food Indus. Ass’n v. United States Dept. of Agric., 81 F.3d 578, 582 (5th Cir.1996). Similarly, a statute should be construed such that no word is left without operative effect. Texaco Inc. v. Duke, 274 F.3d 911, 920 (5th Cir.2001). We are bound to follow each Sentencing Guideline; commentary is also authoritative if not plainly erroneous or inconsistent with the guidelines. United States v. Urias-Escobar, 281 F.3d 165, 167 (5th Cir.2002). Guidelines, and thus their commentary, are subject to the ordinary rules of statutory construction. United States v. Carbajal, 290 F.3d 277, 283 (5th Cir.2002).
Because “use” is not defined by the Sentencing Guidelines, we first look to its plain meaning. Beginning with the definition as commonly understood within the legal community, “use” means “[t]he application or employment of something.” BlaCK’s Law DICTIONARY 1540 (7th ed.1999). In more broad-based English application, “use” is defined as “[t]he act of employing a thing for any ... purpose; the fact, state, or condition of being so employed; utilization or employment for or with some aim or purpose, application or conversion to some ... end.” 19 The OxfoRD English Dictionary 350 (2d ed. 1989) (emphasis added).[4] Similarly, another dictionary ob *603 serves that “SERVICE, ADVANTAGE, PROFIT, ACCOUNT, AVAIL, and USE have in common a sense of a useful or valuable end, result, or purpose. USE stresses the practicality of the end, result, or purpose for which something is employed.” WEBSTER’S THIRD NEW INTERNATIONAL Dictionary of the English Language Unabridged 2523 (1993) (emphasis added).[5] The overwhelming majority of authority on the plain meaning of “use” contemplates the application of something to achieve a purpose. Supplementing the word “force” in place of the indeterminate object “something” in the aforementioned dictionary definition bears out this meaning: “use of force” means “the act of employing force for any ... purpose,” or “to avail oneself of force.” Because we conclude that the meaning of “use of force” is free of ambiguity, we therefore hold that the plain meaning of the word “use” requires intent.
Our adoption of the plain meaning of “use” is further supported by the rule of statutory interpretation that requires us, when possible, to give each word in a statute operative effect. This rule of construction dictates that the word “use” must have an operative effect when left standing alone, or when modified by either “attempted” or “threatened.” Both an attempt and a threat require intent. See BlaCK’s Law Dictionary 123, 1489 (7th ed. 1999) (defining “attempt” and “threat”). Were we to interpret “use of force” inconsistently with its plain meaning' — -that is, as capable of being performed without intent — we would effectively nullify the state of mind required by “attempted use” and “threatened use.” For how could one intentionally attempt to unintentionally use force, or intentionally threaten to unintentionally use force? The force, so to speak, of this rhetorical question only bolsters our belief that “use” requires intent.
Our adoption of the plain meaning of the word “use” is supported by our caselaw as well.[6] In United States v. Chapa-Garza, *604 243 F.3d 921 (5th Cir.2001), we held that the crime of felony DWI under Texas law was not a crime of violence, because “[i\n-tentional force against another’s person or property is virtually never employed to commit this offense.” Id. at 927. At issue in Chapa-Garza was whether felony DWI fit within the 18 U.S.C. § 16(b) definition of crime of violence as an offense “that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” Id. at 924 (citations omitted) (emphasis added). We first declined to read § 16(b) in the same way in which we read U.S.S.G. § 4B1.2(a)(2). Id. at 926. Although we hinged that decision on § 16(b)’s emphasis on the use of force during the commission of the offense, an equally valid basis for distinction is the fact that § 4B1.2(a)(2) does not mention either “use” or “force.” Id. at 925. We went on to avow that “[t]he criterion that the defendant use physical force against the person or property of another is most reasonably read to refer to intentional conduct, not an accidental, unintended event.” Id. at 926. Relying in part on the Third Circuit’s elucidation of “use of force” in United States v. Parson, 955 F.2d 858 (3rd Cir.1992), we concluded that the dictionary definitions of “use” indicate that the word “refers to volitional, purposeful, not accidental, employment of whatever is being ‘used’.” 243 F.3d at 926.
Nothing in our opinion in Chapa-Garza encouraged a reading restricting our plain-meaning analysis of the word “use” to the context of only § 16(b). Section 16(b)’s dictate that “physical force ... may be used” does not differ substantially from § 2L1.2’s “use of force” requirement. The distinction we made between the application of force against the body of another does not necessarily mean that the use of that force was intentional.
Indeed, an example given in Chapa-Garza is not unlike the crime of intoxication assault. In the example posited, we believed that force was not intentionally used. We observed that
[w]hile the victim of a drunk driver may sustain physical injury from physical force being applied to his body as a result of collision with the drunk driver’s errant automobile, it is clear that such force has not been intentionally “used” against the other person by the drunk driver at all, much less in order to perpetrate any crime, including the crime of felony DWI.
243 F.3d at 927. The distinction we made then between force applied against the body of another and force intentionally used against the body of another is one we uphold here.
Our ruling today is also consistent with the result we reached in United States v. Gracia-Cantu, 302 F.3d 308 (5th Cir.2002). Gracia-Cantu’s sentence was enhanced for a prior Texas felony conviction for injury to a child,[7] which the PSR claimed constituted a crime of violence. 302 F.3d at 311. *605 On appeal, it was persuasively argued by Gracia-Cantu and eventually conceded by the Government that § 16(a) was inapplicable to Gracia-Cantu’s predicate offense because “the statutory definition of the offense does not explicitly require the application of force as an element.” Id. at 312. Although we did not further address § 16(a) because of this concession, we now observe that this interpretation of § 16(a) is consistent with our view that “use of force” requires intent.[8]
B. “An Element”
Because the panel held that the use of force was an element of the offense of intoxication assault, we turn now to address whether the intentional use of force is an element of the crime of intoxication assault. We hold that it is not.
As we have earlier noted, § 2L1.2 allows enhancement when the statute has “as an element the use, attempted use, or threatened use of force.” U.S.S.G. § 2L1.2, Application Note l(B)(ii)(I) (2001) (emphasis added). Thus, Vargas-Duran’s sentence enhancement depends not only upon the meaning of the word “use”, but also upon whether the predicate offense has the use of force as an element of the crime.[9] In our current legal terminology, an element is “[a] constituent part of a claim that must be proved for the claim to succeed.” Black’s Law Dictionary 538 (7th ed. 1999). Thus, in order for § 2L1.2 to apply, the intentional use of force must be “a constituent part of a claim that must be proved for the claim to succeed.” See United States v. Williams, 343 F.3d 423, 432 (5th Cir.2003) (observing that “[t]raditionally, an ‘offense’ was defined by its ‘elements,’ i.e., facts necessary to support a conviction for the offense”). If any set of facts would support a conviction without proof of that component, then the component most decidedly is not an element — implicit or explicit — of the crime. More specifically, in the case of Vargas-Duran, intentional use of force would have to be an element of the crime of intoxication assault — that is to say that no conviction would be upheld absent proof that the defendant intentionally used force against the person of another. But a requirement that a defendant intentionally use force is simply not an element that needs to be proved under Texas law.
The Texas crime of intoxication assault requires that a prosecutor prove that the defendant (1) by accident or mistake, (2) while operating a motor vehicle in a public place while intoxicated, (3) by reason of that intoxication causes serious bodily injury to another. Tex. Penal Code Ann. § 49.07 (1994). Texas courts have held that the very words “by accident or mistake” plainly dispense with any mens rea requirement. Stidman v. State, 981 S.W.2d 227, 230 (Tex.App.1998). Therefore, all that need be proved for a conviction is an intoxicated driver’s operation of a motor vehicle in a public place that results in a serious bodily injury to another. No mens rea need be established for prosecution.[10]
*606 Further, the fact that the statute requires that serious bodily injury result from the operation of a motor vehicle by an intoxicated person does not mean that the statute requires that the defendant have used the force that caused the injury. All that the statute requires is that a bodily injury occur and that the injury was causally linked to the conduct of the defendant. No facts beyond these need be established in order for a conviction to lie.
Looking only at the fact of Vargas-Duran’s conviction and the statutory definition of intoxication assault, it is clear that the intentional use of force against the person of another is not a necessary component of the offense. The prosecution of Vargas-Duran for the predicate offense in no way rested on proof of any mens rea, much less intent. There is also a difference between a defendant’s causation of an injury and the defendant’s use of force. Consequently, Vargas-Duran’s use of force was simply not a fact necessary to support his conviction for intoxication assault. Because the use of force is not an element of the' offense of intoxication assault, Vargas-Duran’s sentence was improperly enhanced.
IV. CONCLUSION
For the foregoing reasons, the enhanced sentence applied by the district court is VACATED, and we REMAND this ease for resentencing in accordance with this opinion.

. The 1999 amendment to this statute is of no moment to this appeal.

. Section 1326, title 8, states in pertinent part:
(a) In general
Subject to subsection (b) of this section, any alien who—
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien’s reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under title 18, or imprisoned not more than 2 years, or both, (b) Criminal penalties for reentry of certain removed aliens
Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both[.]

. Chapa-Garza was decided under 18 U.S.C. § 16(b), a predecessor of § 2L1.2 (the guideline at issue in the present appeal). Chapa-Garza’s sentence was enhanced by the district court because it determined that DWI was an aggravated felony. An aggravated felony was, in turn, defined as, among other things, a crime of violence. Section 16(b) of Title 18 provided that a crime of violence was “any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” Cf. § 2L1.2 (2000) (defining a crime of violence as "an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another”).

. Lest this Court be accused of selectively defining "use” to comport with the result reached in this case, we hasten to add that other dictionaries have similarly defined the term. According to The American Heritage Dictionary, "use” means "[t]o put into service or apply for a purpose; employ.” The American Heritage Dictionary of the English Language 1894 (4th ed. 2000). The verb form of "use” as stated in the Encarta World English *603 Dictionary is defined as meaning “to employ something for some purpose or to put something into action or service,” while the noun form is defined as "the act of using something for a particular purpose.” Encarta World English Dictionary 1956 (1999). One Webster's dictionary gives the primary definition of "use” as "the act or practice of employing something,” and a secondary definition as "to put into action or service: avail oneself of: employ.” Webster’s New Collegiate Dictionary 1279 (6th ed. 1979). Finally, "use” has been defined as "the act or practice of using something: employment,” or “to put into action or service.” Webster’s Third New International Dictionary of the English Language Unabridged 2523 (1993).

. We recognize that a member of this Court in dissenting from our denial of en banc rehearing in United States v. Chapa-Garza, 262 F.3d 479, 482 (5th Cir.2001), used an earlier Webster's dictionary synonym explication of "use” to buttress his claim that "without question, force may be used accidentally.” The dissent observed that "Webster’s list of synonyms specifies 'USE is general and indicates any putting to service of a thing, usu. for an intended or fit purpose’. Webster's Third New International Dictionary of the English Language Unabridged (Merriam-Webster 1986). This suggests, of course, that a purpose is not always intended.” Id. at 482, n. 2. As the more recent edition of Webster's Third New International Dictionary of the English Language Unabridged omits the “usually” ad- ’ verbial restriction on purpose, we believe the clear weight of authority suggests that "use of force” requires that one intentionally avail himself of that force.

. There is a Circuit split on the issue of whether "use of force” in the context of Sentencing Guidelines requires intent. See United States v. Lucio-Lucio, 347 F.3d 1202, 1205-06 (10th Cir.2003) (ruling that the “use of force” contemplated by § 16(b) "carries a connotation of at least some degree of intent”); Bazan-Reyes v. INS, 256 F.3d 600, 609, 611 (7th Cir.2001) (holding that "use of force” as contemplated by § 16(a) and § 16(b) requires intentional use). But see *604 United States v. Gonzalez-Lopez, 335 F.3d 793, 799 (8th Cir.2003) (holding that “the definition of crime of violence contained in § 2L1.2(b)(1) does not contain a volitional element”); United States v. Bonilla-Montenegro, 331 F.3d 1047, 1051 (9th Cir.2003) (finding that designation of an offense as a crime of violence does not require the intentional use of force; recklessness will suffice).

. Injury to a child is committed when a person "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury.” Tex. Penal Code Ann. § 22.04(a) (2002).

. This interpretation also comports with our assessment, infra, that not only must force be used intentionally, but such use must also be “an element” of the predicate offense.

. The panel explicitly ruled that "[b]ecause the Texas crime of intoxication assault has as an element the use of force against the person of another, we conclude that the district court did not err in imposing the 16-level enhancement.” United States v. Vargas-Duran, 319 F.3d 194, 199 (5th Cir.2003) (emphasis added).

.Our ruling on the "element” requirement of this Sentencing Guideline is consistent with that of the Second Circuit in Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir.2003). In Chrzanoski, the Government argued that, while the state statute in question did not expressly identify "the use, attempted use, or threatened use” of physical force as an ele *606 ment, it was implicit in the statute’s requirement that physical injury be caused. Id. at 193. The Second Circuit rejected the Government's argument and concluded that there was a difference between the use of force and the causation of injury. Id. at 194. We agree.