DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I concur in dismissing Chavarria’s constitutional challenges to 18 U.S.C. § 922(g)(1), but I dissent from affirmance of the sentence. There is no support in the record for the district court’s factual finding that Chavarria intended by his purely verbal threats to hinder the investigation or prosecution of his offense. The district court and the majority erred in the interpretation of U.S.S.G. § 3C1.1 and its application to the evidence. Consequently, the enhancement, which was based on clear errors of fact and errors of law, should be vacated.
Jose Chavarria, who had been convicted of a felony, was arrested on May 4, 2002 for threatening his girlfriend’s acquaintances with a sawed-off shotgun. After one of them wrestled the gun from Cha-varria,[1] he was arrested by police while driving away.[2]
Officer Tanguma was returning from a SWAT team meeting, and because his radio was not working, called a fellow officer to see “what’s going on?”[3] His fellow officer told him about a disturbance involving a gun at 1511 Garza Street, and Officer Tanguma proceeded toward that address.[4] Arriving at the arrest scene, some distance from 1511 Garza Street, Officer Tanguma observed that Chavarria was handcuffed and on the ground.[5] Fellow officers at the scene told Officer Tanguma that they were awaiting medical attention for Chavarria, who claimed to have been injured during the disturbance.[6] Officer Tanguma went *483 to his police car to put on his “gear.”[7]
When he returned, Officer Tanguma noticed that Chavarria was still lying on the ground but that one of the other officers had removed the handcuffs.[8] Aware that Chavarria was claiming an injury, Officer Tanguma decided to place him in a police car until medical help arrived[9] and to re-handcuff him as well.[10]
Chavarria did not resist being placed in the police car, but Officer Tanguma testified that he had a “little struggle” with Chavarria while attempting to re-handcuff him.[11] After being re-handcuffed, Chavar-ria threatened to stab Officer Tanguma and burn his house down for “messing with” him. Chavarria told the officer that he was a member of the Texas Prison Syndicate, a notorious prison gang, and displayed several tattoos.[12]
At Chavarria’s trial, Officer Tanguma gave testimony solely about Chavarria’s post-arrest outburst and threats.[13] Thus, Officer Tanguma did not testify that he read Chavarria his rights, interrogated him, or participated in any investigation in Chavarria’s case. Chavarria was convicted by a jury of being a felon in possession of a firearm and of possession of an unregistered sawed-off shotgun. As recommended in the probation officer’s pre-sen-fence report, the district court included a two-level increase in Chavarria’s offense level for obstruction of justice. Chavarria was sentenced to 120 months’ imprisonment for each count, with each sentence to be served concurrently.
In enhancing Chavarria’s sentence, the district court stated “It’s clear that Mr. Chavarria, who didn’t have any compunction with threatening 17 people with this gun, certainly could have carried out his threat to Officer Tanguma, and it was obstruction of justice, and it does appear that these threats were made to hinder the investigation of Mr. Jose Chavarria for the very charges that he was subsequently, of which he was subsequently convicted.”[14] The district court did not rely on the pre-sentence report’s additional allegations of witness tampering by Chavarria’s father and girlfriend in reaching its sentencing decision.[15] Chavarria’s objections to the obstruction of justice enhancement were overruled by the district court.
This court reviews the district court’s finding that Chavarria’s threats were made with the intent to hinder the investigation for clear error. A factual finding is clearly erroneous when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been *484 committed.[16] A district court’s fact finding is obviously clearly erroneous when there is no evidence in the record to support the court’s finding.[17]
Contrary to the majority, I believe that the record shows that the district court’s finding that Chavarria intended to hinder the investigation of his firearms offense was clearly erroneous. The district court’s stated reasons for imposing the sentence enhancement alluded to Chavarria’s threatening 17 people with his gun, the conduct leading to his arrest, and his post-arrest verbal threats to Officer Tanguma. Chavarria’s conduct at 1511 Garza Street has little, if any, bearing on whether he later intended to hinder the investigation by his threats to Officer Tanguma at a different location. The district court did not indicate whether it found that Chavar-ria threatened Officer Tanguma with immediate present injury or with injury at some future indefinite time and place. At the time of those threats, however, Cha-varria was handcuffed and in the police car; there is no evidence that he physically threatened the officer in conjunction with his verbal threats. Further, there was no evidence in the record to suggest that Chavarria had any reason to believe that Officer Tanguma would be able to affect the investigation, prosecution, or sentencing with respect to Chavarria’s firearms offense. Moreover, in light of the district court’s conclusory reasons for enhancing Chavarria’s sentence, there is a reasonable possibility that the court was swayed by the Government’s misrepresentation of the content and importance of Officer Tangu-ma’s testimony.[18]
Thus, I am left with a firm and definite conviction that a mistake has been committed because the evidence shows plainly that: (1) Officer Tanguma’s only role in the case was to take charge of Chavarria while awaiting medical attention; (2) there is nothing to indicate that Chavarria had reason to believe that the late arriving Tanguma would have been able to testify to any relevant facts against him at trial; and, (3) while handcuffed and inside a police car, Chavarria made a purely verbal threat to harm the officer, which Chavar-ria was clearly impotent to carry out at that‘time.
In Stinson v. United States,[19] the Supreme Court held that commentary in,the sentencing guidelines manual that interprets or explains a guideline is authoritative unless that commentary is inconsistent with United States Constitution, a federal *485 statute, or that guideline itself.[20] I do not believe that either the majority or the district court applied § 3C1.1 in accord with the Supreme Court’s teaching. It appears that neither gave authoritative weight to § 3Cl.l’s commentary.
That commentary expressly recognizes that conduct warranting the obstruction of justice sentencing enhancement is not “subject to precise definition” and could “vary widely in nature, degree of planning, and seriousness.”[21] The commentary also provides examples of conduct that does or does not typically warrant the application of the enhancement at notes 4 and 5. Most important, the commentary also directs the sentencing court to compare those examples at notes 4 and 5 in making the sentencing enhancement decision.[22] Thus, the commentary provides an analytical framework for determining the applicability of the obstruction of justice sentencing enhancement based on a court’s comparison of the case before it with the examples in application notes 4 and 5. It is clear that this framework amplifies and guides the application of § 3C1.1.
Application note 4 indicates that the sentence enhancement usually applies when a defendant: (a) threatens or intimidates a witness, co-defendant, or juror; (b) commits or suborns perjury; (c) produces false documents during trial or investigation; (d) destroys or conceals material evidence, unless it is done contemporaneously with arrest; (e) escapes or willfully fails to appear for trial; (f) providing materially false information to a judge; (g) provides materially false information to a law enforcev ment officer that substantially obstructs or impedes the investigation or prosecution; (h) provides materially false information to a probation officer in respect to. a pro-sentence or other investigation for the court; (i) commits one or more of the obstruction of justice violations set forth in Title 18 of the United States Code; and/or (j) fails to comply with an injunction or restraining order of the court.[23]
Conversely, application note 5 indicates that the obstruction of justice sentence enhancement does not apply when a defendant: (a) provides a false name or document at arrest, unless this conduct significantly hinders the investigation or prosecution of the offense; (b) makes false statements, not under oath, unless it significantly impeded or hindered the investigation of the offense; (c) provides incomplete or misleading information during the pre-sentence investigation, so long as it is not a material falsehood; (d) avoids or flees from arrest; and/or (e) lies to the probation or pre-trial services officer about drug use.
A' comparison of these two application notes, and a reading of them as a whole, reveals that a defendant’s conduct will warrant a sentencing enhancement if he knows or should know that his conduct could have a material impact on' the investigation, prosecution, or sentencing of his offense of conviction.[24] Application note 6 defines “material” as “evidence, fact, state- *486 merit, or information that, if believed, would tend to influence or affect the issue under determination.”[25] Thus, if circumstances do not indicate that the defendant intended for his conduct to have a material impact on the investigation, prosecution, or sentencing of his offense, that defendant’s sentence should not be enhanced.[26]
In this case, the record shows that Cha-varria could not have believed or intended that his conduct would materially impact the investigation, prosecution, or sentencing with respect to his firearms offense. His verbal threats expressed an intent to inflict harm in the indefinite future to an officer who was neither involved in his actual arrest nor participating in the investigation. Under the totality of the circumstances, the record does not suggest that Chavarria had an intent to hinder the investigation, prosecution, or sentencing related to his offense.
The guidelines commentary “explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice.”[27] Yet nothing in the record indicates that the district court ever considered the commentary to § 3C1.1, much less gave it authoritative weight, in enhancing Chavarria’s sentence.
For these reasons, when the guideline and the commentary are correctly interpreted and applied to the evidence in this case, there is no warrant in the record or basis in law for the enhancement of Cha-varria’s sentence for obstruction of justice under § 3C1.1.

. See R. Vol. 5, Tr. at 105.

. Id. at 111-12.

. Id. at 124, lines 18-20.

. Id.

. Id. at 125, lines 19-20.

. Id. at lines 22-24; 128 lines 6-11.

. R. Vol 5, Tr. at 125-126.

. Id. at 126, lines 2-6.

. Id.

. Id. at lines 14-16.

. See R. Vol. 5, Tr. 126, lines 19-20 ("We sat him in the car, and at that time I tried to re-handcuff him again because I knew that, you know, he was still under investigation ... so, when I went to handcuff him again, he became, you know, upset with me, and we got into kind of a little struggle ensued, and then we finally got him handcuffed again. He threatened me.”).

. Id. at 127.

. See R. Vol. 5, Tr. at 124-129; see also infra note 18.

. See Sent. Tr. at 20, lines 7-15.

. See Sent. Tr. at 20-21 (stating "I don't have to take that into consideration and I haven’t in overruling the objection” in response to Chavarria’s objection to the Government's allegations of witness tampering by Chavarria's father and girlfriend and the pre-sentence report's recommendation that these allegations be an alternate ground for the obstruction of justice enhancement)(emphasis added).

. See Thanh Long Partnership v. Highlands Ins. Co., 32 F.3d 189, (5th Cir.1993)(citing Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1559 (5th Cir.1985)).

. Group Life & Health Ins. Co. v. United States, 660 F.2d 1042, 1057 (5th Cir.1981).

. The Government claimed at sentencing that Officer Tanguma was "a critical and important witness” who testified about Chavar-ria's arrest and about a second gun possessed by Chavarria's father. See Sent. Tr. at 18, lines 5-13. ("Your Honor, Officer Tanguma testified about more than Mr. Chavarria. He also testified about the involvement of his father, Reymundo Chavarria, who was present at the scene. He also testified about the presence of a firearm that was in possession of Mr. Chavarria, of Mr. Reymundo Chavar-ria, which witnesses described as previously being in the possession of Mr. Jose Chavarria. He was a critical and important witness beyond the testimony that Mr. Chavarria threatened him.”) But the transcript of Officer Tanguma’s trial testimony does not support the Government's claim. Instead, the transcript reveals that Officer Tanguma testified only about his impressions of Chavarria’s actions after Chavarria’s arrest and the verbal threats that followed Tanguma's re-handcuffing of Chavarria. See Sentencing Tr. at 18, lines 5-13.

.508 U.S. 36 (1993).

. See id. at 42-43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

. See U.S.S.G. § 3C1.1, cmt. 3.

. See id.

. Id. at cmt. 4.

. Compare § 3C1.1. cmt. 5(b) (ordinarily no enhancement for non-materially false statements to law enforcement officers) with 4(g) (enhancement warranted for materially false statements to law enforcement officers); and 5(c) (ordinarily no enhancement for incomplete or misleading, but not materially false, statements during the pre-sentence investigation) with 4(h) (enhancement warranted for materially false statements or information during the pre-sentence investigation).

. U.S.S.G. § 3C1.1, cmt. 6.

. See, e.g., cmt. 5(a)(ordinarily no enhancement when a defendant provides false identification "where such conduct did not actually result in a significant hindrance to the investigation or prosecution of the instant offense”); cmt. 5(b)(ordinarily no enhancement when a defendant's unsworn statements to law enforcement officers are false so long as the statements are not "materially false”); cmt. 5(c) (ordinarily no enhancement when a defendant provides incomplete or misleading information to a probation officer so long as it is not a "material falsehood”).

.See Stinson, 508 U.S. at 44, 113 S.Ct. 1913; see also United States v. Vargas-Duran, 356 F.3d 598, 602 (5th Cir.2004)(en banc)(stating that commentary to the sentencing guidelines is given "controlling weight”).