**UNITED STATES of America**

v.

**Romolo Mauricio IOVINO a/k/a Romulo Mauricio Iovino**

**No. CRIM.A. B05–602.**

United States District Court, S.D. Texas, Brownsville Division.

Nov. 28, 2005.

Jose A. Esquivel, Jr., United States Attorney's Office, Brownsville, TX, for Plaintiff.

---

Reynaldo Cantu, United States Public Defender's Office, Brownsville, TX, for Defendant.

## OPINION

HANEN, District Judge.

The Court is faced with Defendant's objection to Presentence Investigation Report. That report suggested a sixteen (16) point enhancement pursuant to § 2L1.2(b)(1)(A) of the United States Sentencing Guidelines (hereinafter "U.S.S.G.") to the Base Offense Level of eight (8) due to Defendant's prior conviction for Intoxication Manslaughter. The Court hereby grants Defendant's objection and writes this opinion to memorialize that ruling.

Defendant ("Defendant" or "Iovino") is a citizen of Honduras. He was arrested following an encounter with agents of the Customs and Border Patrol ("CBP") at the CBP checkpoint in Sarita, Texas. Iovino was traveling on a northbound train and was apprehended after he jumped from the train and attempted to escape into the Texas brush country. He pleaded guilty before the United States Magistrate Judge to a violation of 8 U.S.C. §§ 1326(a) and (b). That plea was adopted by this Court without objection by either counsel or Defendant.

The ultimate issue in the case is how this Court is to treat Iovino's 2002 Texas conviction for Intoxication Manslaughter. Records show that Iovino was involved in a traffic altercation with a tractor trailer stopped due to heavy traffic in the southbound lane of the West Loop in Houston. Defendant was a driver of a vehicle which plowed into the back of the tractor trailer. His passenger was pronounced dead at the scene. A blood test indicated Defendant's alcohol level at .14% blood alcohol. He was indicted by a Harris County grand jury for the felony of Intoxication Manslaughter. Specifically, the indictment reads in pertinent part that Defendant:

... did then and there unlawfully, by accident and mistake when operating A MOTOR VEHICLE IN A PUBLIC PLACE while intoxicated, namely NOT HAVING THE NORMAL USE OF HIS MENTAL AND PHYSICAL FACULTIES BY REASON OF THE INTRODUCTION OF ALCOHOL INTO HIS BODY having an alcohol concentration of at least .08% in his blood, and by reason of that intoxication, cause the death of ROEL TREVINO ... by DRIVING HIS MOTOR VEHICLE AN [SIC] CAUSING IT TO COLLIDE WITH ANOTHER VEHICLE.

(emphasis original).

Iovino pleaded guilty to this Indictment and was sentenced on December 12, 2002, to five (5) years custody at the Texas Department of Corrections. He served until August 13, 2004, at which time he was paroled to immigration officials. He was subsequently deported to Honduras in October of 2004. He then returned illegally to the United States and was arrested as described above, setting up the question as to what treatment, if any, the Court should give this prior conviction.

Defendant claims that the proposed sixteen (16) point enhancement runs contrary to the spirit, if not the rule, of *United States v. Vargas–Duran,* 356 F.3d 598 (5th Cir.2004) and *United States v. Dominguez–Ochoa,* 386 F.3d 639 (5th Cir.2004). The government, while conceding that those cases certainly raise an issue, looks to the unpublished Fifth Circuit case of *United States v. Ambrosio,* 54 Fed.Appx. 414, 2002 WL 31718502 (5th Cir.2002), in which the Court specifically held that a Texas intoxication manslaughter conviction was "manslaughter" for U.S.S.G. purposes and, therefore, was a crime of violence. The Application Notes to § 2L1.2 define "crime of violence" as any of the following: "murder, manslaughter, kidnapping ..."

Application Note 1(b)(iii). If intoxication manslaughter and manslaughter are synonyms then Defendant's objection should be overruled and the sixteen (16) point enhancement given. If they are not, then this Court must decide what effect, if any, should be given to that conviction.

The Fifth Circuit in *Ambrosio* gives little analysis, and little by way of guidance (especially considering the analysis that was made in its later opinions in *Vargas–Duran* and *Dominguez–Ochoa* ). Its holding was simply:

> Juan Pablo Ambrosio appeals the sentence he received after he pleaded guilty to being illegally in the United States after having been deported, in violation of 8 U.S.C. § 1836. Ambrosio argues that the district court erred when it enhanced his offense level under U.S.S.G. § 2L1.2(b)(1)(A)(ii) for a prior felony conviction for intoxication manslaughter because intoxication manslaughter, as it is set forth in the Texas Penal Code, is not a "crime of violence" under the guideline. In *United States v. Rayo–Valdez*, 302 F.3d 314, 316 (5th Cir. 2002), this court held that the offenses listed in the guideline are eligible as enhancement offenses without regard to elements under various state laws. Manslaughter is a listed offense. Ambrosio's argument that his offense is not a listed offense because it was intoxication manslaughter fails. *United States v. Fry*, 51 F.3d 543, 547 (5th Cir.1995).

*Ambrosio,* 54 Fed.Appx. at 414.

While Gertrude Stein may be paraphrased incorrectly as having said "a rose is a rose is a rose," the conclusion that a manslaughter is a manslaughter is not as easily reached, especially in light of the case law subsequent to *Ambrosio*.

The Fifth Circuit in *Vargas–Duran* reversed a District Court's judgment giving a sixteen (16) point crime of violence enhancement based on a conviction for intoxication assault explaining that "we now observe that this interpretation of § 16(a) [18 U.S.C. 16(A) ] is consistent with our view that 'use of force' requires intent." *Id.* at 605. Later, the Court addressed the U.S.S.G. and stated, "... in order for § 2L1.2 to apply, the *intentional* use of force must be 'a constituent part of a claim that must be proved for the claim to succeed.' " *Id.* It then concluded that "intentional use of force would have to be an element of the crime of intoxication assault—that is to say that no conviction would be upheld absent proof that Defendant *intentionally used force against the person of another*." *Id.* Based upon that reasoning, the Court held that intoxication assault was not a crime of violence.

The Fifth Circuit has issued similar decisions in a variety of contexts. In *United States v. Chapa–Garza*, 243 F.3d 921 (5th Cir.2001), the court held that driving while intoxicated was not a crime of violence. An earlier panel had ruled that DUI was a crime of violence, but that opinion was withdrawn pursuant to a motion of the appellant. *Camacho–Marroquin v. INS*, 188 F.3d 649 (5th Cir.1999), *withdrawn* 222 F.3d 1040 (5th Cir.2000). In *Chapa–Garza*, the court held that 18 U.S.C. § 16(b) should not be interpreted as broadly as § 4B1.2(a)(2) U.S.S.G. Further, and more importantly, it held that the "substantial risk of force" language found § 16(B) referred to "a substantial likelihood that the perpetrator will *intentionally* employ physical force." *Id.* at 926 (emphasis added).

Thus, in *Vargas–Duran* under the U.S.S.G. and in *Chapa–Garza* discussing 18 U.S.C. § 16(B), the Fifth Circuit has twice required the intentional use of force. This has been applied to other situations involving criminal acts of a nature so vio-

lent as to result in the death of another. In *United States v. Dominguez–Ochoa*, 386 F.3d 639 (5th Cir.2004), the court held that criminally negligent homicide was not a crime of violence under § 2L1.2. In doing so, the court rejected the State's argument that criminally negligent homicide is the Texas equivalent of manslaughter—an offense enumerated in the crime of violence definition. The Texas Penal Code defines manslaughter as recklessly causing the death of another. *See* Texas Penal Code § 19.05. Citing *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Fifth Circuit relied on the generic, contemporary meaning to define manslaughter since § 2L1.1 did not. *Dominguez–Ochoa,* 386 F.3d at 642. After a lengthy review of various usages and definitions of the term manslaughter, the Court held that generic contemporary manslaughter (the kind used in the U.S.S.G.) requires a "recklessness" *mens rea. Id.* at 646. The court concluded that since criminally negligent homicide under Texas law does not employ a recklessness *mens rea,* it is not the equivalent of manslaughter as enumerated in the U.S.S.G. *Id. also, United States v. Valenzuela,* 389 F.3d 1305 (5th Cir.2004) (Florida DUI/manslaughter conviction not a crime of violence); *Leocal v. Ashcroft,* 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271, (2004) (Florida DUI offenses, even those resulting in serious bodily injury, are not crimes of violence.)

In the instant case, Iovino was charged with "then and there unlawfully by accident and mistake when operating A MOTOR VEHICLE IN A PUBLIC PLACE while intoxicated." He pleaded guilty to the second degree felony of Intoxication Manslaughter, an offense found in § 49.08 of the Texas Penal Code. Chapter 49 of the Texas Penal Code is entitled Intoxication and Alcoholic Beverage Offenses. The offense in question does not require any specific *mens rea*

and certainly not one of recklessness, although one could argue that to drink and drive is reckless. Further, the indictment clearly indicates the act was done "by accident and mistake." The prior section, § 49.07, is the intoxication assault offense of which *Vargas–Duran* was found guilty. In Texas, the generic offense of manslaughter is found in Chapter 19 of the Texas Penal Code—the chapter concerning Criminal Homicide (*See* § 19.04 which does require the *mens rea* of recklessness contemplated by the *Dominguez–Ochoa* ).

While giving due deference to the unpublished decision in *Ambrosio*, this Court feels that it is not an accurate statement of the law under the current dictates of the Fifth Circuit. It was decided prior to *Vargas–Duran* and *Dominguez–Ochoa* and contains none of the analysis made in those cases. It appears to merely compare the U.S.S.G. use of the word "manslaughter" with the Texas Penal Code Chapter 49 use of the word "manslaughter" in the title of the offense and finds a match. Despite the fact that the *Ambrosio* case appears to be the only case directly interpreting this applicable statute, this Court cannot reconcile that result with the contemporary wave of Fifth Circuit cases.

Therefore, the objection made by Defendant to the sixteen (16) point enhancement pursuant to § 2L1.2(b)(1)(A) is sustained, and the Court will sentence Defendant in accordance with this ruling.