# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 22, 2013

Lyle W. Cayce
Clerk

No. 12-40427

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSE JUAN CARRILLO-ROSALES,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:11-CR-1963-1

Before STEWART, Chief Judge, and HIGGINBOTHAM and JONES, Circuit Judges.

PER CURIAM:[*]

In certain circumstances, the Federal Sentencing Guidelines instruct a district court to increase a defendant's offense level by sixteen points if he has previously been convicted of a "crime of violence." The district court applied that enhancement when sentencing Jose Juan Carrillo-Rosales, who had earlier been convicted of third-degree rape. Carrillo contends, for the first time on appeal,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

that the district court erred by applying the enhancement. Perceiving no reversible error, we AFFIRM.

## I.

Carrillo is a citizen of Mexico. He came to the United States unlawfully when he was three years old. At twenty, he committed two counts of third-degree rape, a crime under Washington state law.[1] Carrillo pleaded guilty to both counts. In his written "Statement of Defendant on Plea of Guilty," he admitted that he "engaged in sexual intercourse with a woman who was not [his] spouse who did not have the legal ability to give consent due to her age of 13 years at the time." Soon thereafter, he was deported to Mexico.

Carrillo reentered the United States unlawfully. Immigration authorities "found" him in Texas over a decade later.[2] He pleaded guilty to violating 8 U.S.C. § 1326, which proscribes being "found in" the United States after unlawful reentry.[3] This appeal concerns only his sentence.

In anticipation of sentencing, a probation officer prepared a Presentence Investigation Report (PSR). The PSR advised that Carrillo's base offense level should be increased from 8 to 24 because he "was deported after sustaining a felony conviction for a crime of violence"—namely, third-degree rape.[4] The district court agreed and sentenced Carrillo to 41 months of imprisonment, the very bottom of his Guidelines range. Carrillo appeals, arguing that the district court should not have applied the crime-of-violence enhancement.

---

[1] *See* WASH. REV. CODE § 9A.44.060.

[2] *See United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996) (discussing "found in" offenses).

[3] *See* 8 U.S.C. § 1326(a) and (b); *see also* 6 U.S.C. §§ 202(3) and (4), 557.

[4] *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii).

**II.**

The government urges that Carrillo waived any claim of error. We need not engage this threshold dispute over preservation of error. By recent decisions of the Supreme Court and this Court, there was no error and the judgment must be affirmed.

As relevant here, section 2L1.2(b)(1)(A)(ii) of the Federal Sentencing Guidelines instructs a district court to increase a defendant's offense level by 16 "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence."[5] An application note defines "crime of violence" to mean "any of the following offenses under federal, state, or local law:"

> Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.[6]

As this commentary is not "plainly erroneous or inconsistent with the guideline[]," we are bound to follow it.[7] Accordingly, there are two ways an offense can be a crime of violence. First, it can be one of the enumerated offenses—such as a forcible sex offense, statutory rape, or sexual abuse of a minor. Second, it can satisfy the catch-all provision, by having "as an element the use of force, attempted use, or threatened use of physical force against the person of another." If the offense of which Carrillo was convicted falls into either category, the district court did not err—plainly or otherwise.

---

[5] U.S.S.G. § 2L1.2(b)(1)(A)(ii).

[6] *Id.* § 2L1.2 cmt. n.1(B)(iii).

[7] *United States v. Vargas-Duran*, 356 F.3d 598, 602 (5th Cir. 2004) (en banc).

This case concerns only enumerated offenses.[8] The government argues that Carrillo's third-degree-rape offense qualifies as "statutory rape" and as a "forcible sex offense[]." Carrillo does not dispute that—at twenty years old—he had sex with a thirteen-year-old girl. He does not dispute that—at thirteen years old—she was legally incapable of consenting to their sexual contact. But Carrillo does dispute the government's use of that factual information, arguing that we may look at the circumstances of his offense only to determine which portion of Washington's third-degree-rape law he violated. If that portion of the law can be violated in a way that is not "statutory rape" or a "forcible sex offense[]," he argues, then he was not convicted of those enumerated offenses.

After the parties completed their briefing, our en banc Court clarified how to determine whether an offense of conviction qualifies as an enumerated offense.[9] It explained:

> First, we identify the undefined offense category that triggers the federal sentencing enhancement. We then evaluate whether the meaning of that offense category is clear from the language of the enhancement at issue or its applicable commentary. If not, we proceed to step two, and determine whether that undefined offense category is an offense category defined at common law, or an offense category that is not defined at common law. Third, if the offense category is a non-common-law offense category, then we derive its "generic, contemporary meaning" from its common usage as stated in legal and other well-accepted dictionaries. Fourth, we look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic meaning of the enumerated offense category.[10]

---

[8] The government does not contend otherwise.

[9] This decision is controlling, since we assess whether an error is plain based on the law in effect at the time of our decision—not the district court's decision. *See Henderson v. United States*, 133 S. Ct. 1121, 1130–31 (2013); *United States v. Escalante-Reyes*, 689 F.3d 415, 418 (5th Cir. 2012) (en banc).

[10] *United States v. Rodriguez*, 711 F.3d 541, 544 (5th Cir. 2013) (en banc).

In *Descamps v. United States*,[11] the Supreme Court reinforced our focus on "the elements of the state statute of conviction."[12] It explained that the elements of a state-law offense determine what a defendant was *actually* convicted of, while the facts underlying that offense demonstrate only that a defendant may have "*committed* [an offense], and so hypothetically *could have been* convicted under a law criminalizing that conduct."[13] Although *Descamps* interpreted a different provision of law (and did so with Sixth-Amendment concerns in the background), its textual analysis applies here, too. Moreover, *Descamps* extended the line of cases beginning with *Taylor v. United States*,[14] the precise line from which our en banc court in *Rodriguez* derived its approach.[15] Our en banc court did opine—pre-*Descamps*—that it was "skeptical that *Taylor* and its progeny lead to reasonable results if lower courts must disregard facts that show that the defendants' conduct, in essence, constituted a crime of violence."[16] Reasonable or not, *Descamps* makes pellucidly clear that while conduct can be "in essence" a crime of violence, a *conviction* is a crime of violence (or not) based only on its underlying elements.[17]

Of course, if the state-law statute of conviction "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile," we may consult "a limited class

---

[11] No. 11-9540, 2013 WL 3064407 (2013).

[12] *Rodriguez*, 711 F.3d at 544.

[13] *Descamps*, 2013 WL 3064407, at *9.

[14] 495 U.S. 575 (1990).

[15] *See, e.g.*, *Rodriguez*, 711 F.3d at 544, 549, 553–56; *see also id.* at 553 ("We adopt this approach based on our close review of *Taylor*.").

[16] *Id.* at 561 n.25.

[17] *Cf.* U.S.S.G. § 2L1.2(b)(1)(A)(ii) (asking whether "the defendant previously was deported . . . after . . . a *conviction* for a felony that is a crime of violence" (emphasis added)).

of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."[18] But our focus is always on the applicable elements of the offense of conviction. With that in mind, we turn to Carrillo's conviction.

Carrillo was convicted under Washington's third-degree rape statute. At the time of his conviction, that statute was violated when:

> (1) . . . under circumstances not constituting rape in the first or second degrees, [a] person engage[d] in sexual intercourse with another person, not married to the perpetrator:
>
>> (a) Where the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct, or
>>
>> (b) Where there [wa]s threat of substantial unlawful harm to the property rights of the victim.[19]

As set out in RCW 9A.44.010(7), "[c]onsent means that at the time of the act of sexual intercourse or sexual contact there are words or conduct indicating freely given agreement to have sexual intercourse or sexual contact."[20]

The parties rightly agree that our focus is on paragraph (1)(a).[21] Per our recent en banc opinion, we must first identify the elements of the enumerated offense at issue (steps 1–3) and then "look to the elements of the state statute of conviction and evaluate whether those elements comport with the generic

---

[18] *Descamps*, 2013 WL 3064407, at \*1; *see also Rodriguez*, 711 F.3d at 549 n.8 (endorsing this "modified categorical approach").

[19] WASH. REV. CODE § 9A.44.060.

[20] *Id.* § 9A.44.010(7).

[21] We may consider the document accompanying Carrillo's plea to determine whether he violated paragraph (1)(a) or (1)(b). *Cf. Shepard v. United States*, 544 U.S. 13, 20–21 (2005) (authorizing consideration of "a transcript of [a] plea colloquy[,] . . . written plea agreement presented to the court, or . . . a record of comparable findings of fact adopted by the defendant upon entering the plea").

meaning of the enumerated offense category."[22] "If any set of facts would support a conviction without proof of [a] component, then the component most decidedly is not an element—implicit or explicit—of the crime."[23]

We begin with statutory rape. A person commits statutory rape only when he has sexual contact with a person under the age of consent (as that age is defined by state statute).[24] Paragraph (1)(a) can be violated regardless of the age of the victim. Accordingly, the age of the victim is not an element of a paragraph (1)(a) violation, and Carrillo was not convicted of statutory rape—even if, to borrow a phrase from *Descamps*, he "hypothetically *could have been* convicted under a law criminalizing that conduct."[25] Thus, Carrillo's conviction qualifies as a crime of violence only if it is a forcible sex offense.

"[F]orcible sex offenses" include offenses in which "consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced."[26] This language is clear (as relevant here), so we need only determine whether the elements of Washington's third-degree rape statute entail such an offense. We hold that they do. A person is guilty of third-degree rape only if his victim clearly expresses her lack of consent.[27] If a victim clearly expresses that she does not consent, then her "consent to the

---

[22] *Rodriguez*, 711 F.3d at 544.

[23] *Vargas-Duran*, 356 F.3d at 605.

[24] *See Rodriguez*, 711 F.3d at 561–62.

[25] 2013 WL 3064407, at *9.

[26] U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

[27] *See* WASH. REV. CODE § 9A.44.060(1)(a). Washington does, of course, define "consent" to mean a *lack* of "words or conduct indicating freely given agreement." *Id.* § 9A.44.010(7). Carrillo could have argued that a person could "consent" without *expressing* "consent"—and that the possibility of valid, unexpressed consent means that the elements of third-degree rape do not entail a forcible sex offense. This possibility is of no moment, however, as Washington requires that the lack of consent itself be clearly expressed.

conduct is not given."[28] Thus, because the third-degree-rape statute requires that "consent to the conduct is not given," a violation of that statute is a forcible sex offense within the meaning of the Guidelines.[29] Consequently, the district court was correct to apply the crime-of-violence enhancement.[30]

Carrillo contends that he is not guilty of a forcible sex offense because his conviction did not require proof of "coercion." The crime-of-violence enhancement is appropriate so long as a conviction entails *a* forcible sex offense—and forcible sex offenses come in many forms. If a conviction requires proof that "consent to the conduct is . . . incompetent," it need not *also* require proof that, for example, "consent to the conduct is coerced." Put differently, whether a statute requires coercion is irrelevant so long as its elements require proof of *a* forcible sex offense—and Washington's third-degree rape statute does precisely that.[31]

**\* \* \***

As Carrillo's third-degree rape conviction was properly classified as a crime of violence, we AFFIRM.

---

[28] U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).

[29] *See id.*

[30] *Cf. United States v. Gallegos-Galindo*, 704 F.3d 1269 (9th Cir. 2013) (holding that a violation of Washington's third-degree rape statute was a crime of violence). We take no position on whether *Gallegos-Galindo*'s rationale is consistent with *Rodriguez*.

[31] Carrillo also argues that Washington law determines "consent" from the perspective of the victim, and appears to contend that the Guidelines require consideration of only the perpetrator's perspective. In other words, Carrillo may be asking us to read "consent is not given"—the phrase in the Guidelines' commentary—to mean that "consent is *understood by the perpetrator* not to be given." Even if Carrillo is making this argument, it lacks force: it is not plain error to conclude that "consent is not given" when a defendant *mistakenly* believes that someone consents—but she does not, in fact, do so.